FAHEY, J.
The answer to the question "how long is too long?" is a difficult one to resolve. However, certain basic principles must guide us. An accused's right to be presumed innocent is protected by the right to prompt justice. Incarceration should generally follow conviction, not precede it. The failure of our criminal justice system to promptly resolve cases erodes faith in its fundamental fairness. This Court has long recognized that "[s]ociety, as well as the defendant, has an important interest in assuring prompt prosecution of those suspected of criminal activity" ( People v. Staley, 41 N.Y.2d 789, 792, 396 N.Y.S.2d 339, 364 N.E.2d 1111 [1977], citing People v. Johnson, 38 N.Y.2d 271, 276, 379 N.Y.S.2d 735, 342 N.E.2d 525 [1975] ). Delays are often inevitable and justifiable. Nevertheless, in discharging their obligation to ensure "that those accused of crimes are swiftly brought to justice" ( Johnson, 38 N.Y.2d at 276, 379 N.Y.S.2d 735, 342 N.E.2d 525 ), the People do not have discretion to indefinitely delay a defendant's trial in order to pursue evidence that would strengthen their case.
***7 On this appeal, we must determine whether a lengthy delay between defendant's arrest and his eventual guilty plea violated his constitutional right to a speedy trial. Applying the factors set forth in People v. Taranovich, 37 N.Y.2d 442, 373 N.Y.S.2d 79, 335 N.E.2d 303 (1975) to the circumstances of this case, we conclude that defendant's right to a speedy trial was violated.
I.
On May 24, 2008, after a "sweet sixteen" party, defendant Reginald Wiggins and codefendant Jamal Armstead confronted another partygoer after they were told that the partygoer had insulted their friend. Armstead pointed a gun at the alleged offender and pulled the trigger, but the gun did not fire. Armstead then handed the gun to defendant, who fired a shot that hit a 15-year-old bystander, killing him. Defendant was 16 years old at the time.
Defendant was arrested on May 28, 2008 and remanded without bail. Defendant and Armstead were charged in an indictment with murder in the second degree, two counts of attempted murder in the second degree, and criminal possession of a weapon in the second degree. On August 26, 2008, defendant filed an omnibus motion in Supreme Court seeking, inter *307 alia, severance of his case from Armstead's, in part on Bruton grounds (see generally Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 [1968] ). On October 23, 2008, the court held that part of the motion seeking severance on Bruton grounds in abeyance, pending resolution of Armstead's motion to suppress his statements to police. The court, however, did not hold a Huntley hearing in Armstead's case or decide that suppression motion for nearly four years.
For approximately 2½ years, from January 2009 to June 2011, the People sought to obtain Armstead's cooperation in testifying against defendant. The People requested numerous adjournments for that purpose, generally with Armstead's consent. Inasmuch as severance had not yet been granted, these adjournments necessarily also resulted in adjournments of defendant's case. The People pursued Armstead's cooperation for this length of time even though the People acknowledged during later litigation of defendant's speedy trial motion that Armstead "repeatedly indicated through his lawyer that he [would] never testify against the defendant," although they further asserted, without elaboration, that "Armstead himself has wavered on this point."
***8 The People's efforts to obtain Armstead's cooperation were unsuccessful. In June 2011, the People presented Armstead with the terms of a cooperation agreement, which Armstead rejected. Armstead's request for reassignment of counsel was granted. In July 2011, the People announced their intention to try Armstead first, separately from defendant. The People hoped that if Armstead was convicted on a top count, he might decide to testify against defendant in exchange for a more lenient sentence. The People further asserted that Armstead's testimony "would significantly enhance the overall nature and quality of the evidence against the defendant." Due to adjournments requested by Armstead's counsel, Armstead's Huntley hearing did not begin until May 2012. In August 2012, the court denied Armstead's motion to suppress his statements.
In the meantime, in October 2011, defendant was involved in a jailhouse altercation. He was convicted of assault in the second degree, and in June 2013, he was sentenced to 4½ years' imprisonment. That judgment was affirmed on appeal ( People v. Wiggins, 132 A.D.3d 514, 17 N.Y.S.3d 421 [1st Dept. 2015], lv denied 27 NY3d 1076, 60 N.E.3d 1212 [2016] ). Defendant was also charged in 2009 with conspiracy and gang assault. Those charges were pending until March 2013, when they were ultimately dismissed.
Armstead's first trial began in October 2012, resulting in a partial verdict convicting him of criminal possession of a weapon in the second degree. Before deliberations could continue on the remaining counts, Hurricane Sandy interrupted the trial. When the trial resumed on November 7, 2012, only 11 jurors returned, and the court declared a mistrial. Armstead's counsel announced that he would be unable to retry the case until the following April.
In April 2013, Armstead's second trial began. That trial also ended in a mistrial due to jury deadlock. Armstead's counsel stated that he would be unable to retry the case until October.
In May 2013, before Armstead's third trial began, defendant filed his first motion to dismiss the indictment on constitutional speedy trial grounds. The court denied that motion in December 2013. The court acknowledged that the delay was lengthy, but reasoned that "a good part of the extraordinary delay was caused by" Armstead, and that defendant had been incarcerated due to his unrelated pending cases *308 during much of that time. The court further concluded that the defense did not appear to be impaired by the delay. ***9 Armstead's third trial began in January 2014. Armstead was acquitted of second-degree murder, but the jury deadlocked on the attempted murder counts, and a third mistrial was declared. Armstead's fourth trial was scheduled for August 2014. In June 2014, defendant filed a second motion to dismiss the indictment based on a violation of his constitutional right to a speedy trial.
By September 23, 2014, Armstead's fourth trial had not yet begun, and the People had not responded to defendant's second speedy trial motion. Defendant pleaded guilty to manslaughter in the first degree in exchange for a determinate sentence of 12 years' imprisonment, to be followed by five years' postrelease supervision. During the plea proceeding, defendant withdrew his pending speedy trial motion. On October 7, 2014, defendant was sentenced in accordance with the terms of the plea agreement. On February 26, 2015, Armstead pleaded guilty to attempted murder in the second degree in exchange for a sentence of 15 years' imprisonment, to be followed by five years' postrelease supervision.
In short, the People pursued a cooperation agreement with Armstead for approximately 2½ years. After that effort proved unsuccessful, they spent the next three years attempting to convict Armstead, trying him separately from defendant. After three mistrials, Armstead had been convicted of only criminal possession of a weapon in the second degree, he had been acquitted on the top count of second-degree murder, and the People were no closer to securing his testimony against defendant. The time between defendant's arrest on May 28, 2008 and defendant's plea on September 23, 2014 spanned six years, three months, and 25 days, from when defendant was 16 years old until he was 22. Defendant spent the entirety of that period incarcerated.
On appeal, the Appellate Division held, in a 3-2 decision, that defendant's constitutional right to a speedy trial was not violated ( People v. Wiggins, 143 A.D.3d 451, 39 N.Y.S.3d 395 [1st Dept. 2016] ). One of the dissenting Justices granted defendant leave to appeal to this Court ( 28 N.Y.3d 1152, 52 N.Y.S.3d 303, 74 N.E.3d 688 [2017] ). We now reverse.
II.
We analyze constitutional speedy trial claims using the five factors set forth in People v. Taranovich, 37 N.Y.2d 442, 373 N.Y.S.2d 79, 335 N.E.2d 303 (1975) : "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has ***10 been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" ( id. at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303 ). These factors are similar, but not identical, to the factors used in evaluating speedy trial claims under the Federal Constitution, which include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" ( Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 [1972] ). "[N]o one factor or combination of the factors ... is necessarily decisive or determinative of the speedy trial claim, but rather the particular case must be considered in light of all the factors as they apply to it" ( Taranovich, 37 N.Y.2d at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303 ).
To the extent the People argue that our review of this issue is circumscribed because the balancing of the Taranovich factors generally or the lower courts' determination *309 as to the second Taranovich factor specifically constitutes a mixed question of law and fact, we disagree. The People rely on People v. Vernace, 96 N.Y.2d 886, 887, 730 N.Y.S.2d 778, 756 N.E.2d 66 (2001), where we held that the Appellate Division's determination that the People had good cause to delay the commencement of prosecution based on witness fear was "a mixed question of law and fact for which there is support in the record" (id. ). Whether witnesses were fearful involves factual inferences beyond the review powers of this Court. Here, the reason for the delay is not a disputed factual issue; the dispute pertains only to whether the reason for the delay was sufficient to justify it as a matter of law. Furthermore, we have never referred to the general application of the Taranovich factors as a mixed question over which we have limited powers of review.
A.
With respect to the first Taranovich factor-the length of the delay-we agree with the Appellate Division that "[t]here is no question that the six-year delay between the shooting in 2008 and defendant's guilty plea in 2014 was 'extraordinary' " (Wiggins, 143 A.D.3d at 455, 39 N.Y.S.3d 395, quoting People v. Staley, 41 N.Y.2d 789, 792, 396 N.Y.S.2d 339, 364 N.E.2d 1111 [1977] ; see People v. Romeo, 12 N.Y.3d 51, 56, 876 N.Y.S.2d 666, 904 N.E.2d 802 [2009], cert denied 558 U.S. 817, 130 S.Ct. 63, 175 L.Ed.2d 24 [2009] ), and therefore that this factor favors defendant. Even if we examine only the time between defendant's arrest and the denial of his first speedy trial motion, as the People contend we must because defendant withdrew his second speedy trial motion when he pleaded guilty, that delay still amounts to 5½ years. Although we have "steadfastly ***11 refused to set forth a per se period beyond which a criminal prosecution may not be pursued" ( Taranovich, 37 N.Y.2d at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303 ), and this extraordinary delay therefore is "not in itself decisive," it demands "close scrutiny of the other factors, especially the question of why the delay occurred," inasmuch as it is "the People's burden to bring defendant to trial in a timely fashion" ( Romeo, 12 NY3d at 56, 876 N.Y.S.2d 666, 904 N.E.2d 802 ).
B.
The second Taranovich factor requires us to consider the reason for the delay. There are two primary reasons for the extraordinary delay here: adjournments consented to or requested by Armstead, and the People's desire to secure Armstead's cooperation in testifying against defendant. Although the People point to other reasons for the delay outside of their control, such as a fire in the courthouse and Hurricane Sandy, those delays were minimal. The People also note that some delay was due to defendant's requests for adjournments for motion practice, discovery, and reassignment of counsel, but those adjournments amounted to, at most, seven months of the delay.
Addressing first delay attributable to Armstead, the Appellate Division erred in applying case law interpreting CPL 30.30 to conclude that adjournments granted with Armstead's consent "should not be chargeable here" (Wiggins, 143 A.D.3d at 455, 39 N.Y.S.3d 395). CPL 30.30 is inapplicable, inasmuch as defendant was charged with second-degree murder (see CPL 30.30[3][a] ).
Furthermore, even though we have acknowledged that CPL 30.30"in large part serves the same purposes" as CPL 30.20 ( People v. Anderson, 66 N.Y.2d 529, 535, 498 N.Y.S.2d 119, 488 N.E.2d 1231 [1985] ), we have also stated that the problem *310 of prosecutorial readiness addressed by CPL 30.30 and the constitutional speedy trial right are not analogous. "Although the words 'speedy trial' appear in the title to CPL 30.30 and the section is often referred to as expressing a statutory right to a speedy trial, in both form and intention it articulates only the right of a defendant to a dismissal 'where the people are not ready for trial' " ( People v. Brothers, 50 N.Y.2d 413, 417, 429 N.Y.S.2d 558, 407 N.E.2d 405 [1980] ). "[A] defendant's right to a CPL 30.30 dismissal has its origin solely in legislative enactment which is in no way expressive of or dependent on any constitutional right to speedy trial" ( id. at 418, 429 N.Y.S.2d 558, 407 N.E.2d 405 ; see People v. Johnson, 38 N.Y.2d 271, 278 n 3, 379 N.Y.S.2d 735, 342 N.E.2d 525 [1975] ). The legislature intended for CPL 30.30"to address only the problem of prosecutorial readiness" ( People v. Worley, 66 N.Y.2d 523, 527, 498 N.Y.S.2d 116, 488 N.E.2d 1228 [1985] ). ***12 CPL 30.30(4)(d) generally excludes from time chargeable to the People reasonable periods of delay attributable to a codefendant because those delays are not the result of prosecutorial unreadiness. By contrast, "[t]he protection of speedy trial rights, which would include the consideration of delays caused not only by the prosecution but also by factors such as court congestion, were addressed by CPL 30.20 and by constitutional provisions" ( Worley, 66 N.Y.2d at 527, 498 N.Y.S.2d 116, 488 N.E.2d 1228 ). Thus, although many of the adjournments, both before and after the People decided to try Armstead first, were at Armstead's request or on his consent, each criminal defendant has an individual constitutional right to a speedy trial that cannot be rendered meaningless by the dilatory tactics of his or her codefendant.
In any event, even if CPL 30.30 were applicable, that statute excludes from the time chargeable to the People only a "reasonable period of delay" attributable to a codefendant, and then only when good cause has not been shown for granting a severance and the codefendant's CPL 30.30 time has not run ( CPL 30.30[4][d] ). Here, it is questionable whether the delay attributable to Armstead would be considered "reasonable" even if CPL 30.30 applied. In addition, defendant did show good cause for a severance on Bruton grounds in 2008. The trial court, however, did not determine whether Armstead's statement would be suppressed until nearly four years later.
Turning to the People's desire to secure Armstead's testimony against defendant, the Appellate Division was also incorrect in concluding that it could not "second guess 'the significant amount of discretion that the People must of necessity have' in the prosecution of an indictment ..., so long as they act in good faith" (Wiggins, 143 A.D.3d at 457, 39 N.Y.S.3d 395). The Appellate Division quoted People v. Decker, 13 N.Y.3d 12, 15, 884 N.Y.S.2d 662, 912 N.E.2d 1041 (2009) for that proposition, but Decker is a case involving preindictment delay (see id. at 13-14, 884 N.Y.S.2d 662, 912 N.E.2d 1041 ). It is true that this Court has "never drawn a fine distinction" between due process violations based on delay in commencing prosecution and speedy trial violations ( People v. Singer, 44 N.Y.2d 241, 253, 405 N.Y.S.2d 17, 376 N.E.2d 179 [1978] ). "Indeed, the factors utilized to determine if a defendant's rights have been abridged are the same whether the right asserted is a speedy trial right or the due process right to prompt prosecution" ( People v. Vernace, 96 N.Y.2d 886, 887, 730 N.Y.S.2d 778, 756 N.E.2d 66 [2001], citing Staley, 41 N.Y.2d at 792, 396 N.Y.S.2d 339, 364 N.E.2d 1111 ;
*311 see Decker, 13 N.Y.3d at 15, 884 N.Y.S.2d 662, 912 N.E.2d 1041 ). The relevance of the People's good faith, however, is one distinction between the due process right to prompt prosecution and the right to a speedy trial.
***13 In Singer, we acknowledged that pursuant to United States Supreme Court case law, "[c]haracterization of the delay as 'preindictment' or 'postindictment' is often determinative," inasmuch as a claim of unconstitutional preindictment delay "generally requires a showing of actual prejudice before dismissal would be warranted" ( Singer, 44 N.Y.2d at 252, 405 N.Y.S.2d 17, 376 N.E.2d 179, citing United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 [1971], and United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 [1977] ). The Singer Court made clear that, under state due process principles, "lengthy and unjustifiable delay in commencing the prosecution may require dismissal even though no actual prejudice to the defendant is shown" ( Singer, 44 N.Y.2d at 253-254, 405 N.Y.S.2d 17, 376 N.E.2d 179 ). The Singer Court further held, however, that "a determination made in good faith to defer commencement of the prosecution for further investigation or for other sufficient reasons, will not deprive the defendant of due process of law even though the delay may cause some prejudice to the defense" ( id. at 254, 405 N.Y.S.2d 17, 376 N.E.2d 179, citing Lovasco, 431 U.S. at 790, 97 S.Ct. 2044 ). In preindictment delay cases decided after Singer, we have repeated that statement (see Decker, 13 N.Y.3d at 14, 884 N.Y.S.2d 662, 912 N.E.2d 1041 ; Vernace, 96 N.Y.2d at 888, 730 N.Y.S.2d 778, 756 N.E.2d 66 ).
By contrast, in post-charge delay cases, the People's good faith determination to delay the defendant's trial cannot continue indefinitely, even if their proffered justification for the delay would otherwise excuse a reasonable period of delay. For example, in Romeo, we held that the defendant's constitutional speedy trial right had been violated even though the defendant did "not suggest that the People acted with bad faith" ( Romeo, 12 N.Y.3d at 56, 876 N.Y.S.2d 666, 904 N.E.2d 802 ). Thus, in cases considering delay between formal commencement of a criminal action and trial, although bad faith by the People "obviously would weigh heavily in favor of dismissal of the indictment," the People's good faith will not insulate their decision to delay trial from judicial review on constitutional speedy trial grounds ( id. at 56-57, 876 N.Y.S.2d 666, 904 N.E.2d 802 ; see also Doggett v. United States, 505 U.S. 647, 656-657, 112 S.Ct. 2686, 120 L.Ed.2d 520 [1992] ; Barker, 407 U.S. at 531, 92 S.Ct. 2182 ).
The People necessarily have wider discretion to delay commencement of prosecution for good faith, legitimate reasons than they do to delay a defendant's trial after charges have been filed, even for legitimate reasons and without acting in bad faith.
"It requires no extended argument to establish that prosecutors do not deviate from 'fundamental ***14 conceptions of justice' when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.... [R]equiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would *312 add to the time during which defendants stand accused but untried.... [N]o one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so" ( Lovasco, 431 U.S. at 790-792, 97 S.Ct. 2044 ).
In other words, the People generally have " 'the untrammeled power to institute a prosecution any time within the limitations period ... but once having instituted the prosecution by detainer warrant, indictment or other initiatory process, they have the obligation of advancing it unless there is a reasonable ground for delay ' " ( People v. White, 32 N.Y.2d 393, 398, 345 N.Y.S.2d 513, 298 N.E.2d 659 [1973], quoting People v. Winfrey, 20 N.Y.2d 138, 144, 281 N.Y.S.2d 823, 228 N.E.2d 808 [1967] ).
Here, we assume that the People acted on a good faith belief that Armstead's testimony would "significantly enhance the overall nature and quality of the evidence against ... defendant," as they assert. Yet the People cannot justify this extraordinary delay through their good faith alone. The People do not have unfettered discretion to indefinitely pursue evidence that would strengthen their case while the defendant's trial is postponed.
We do not suggest that a defendant's constitutional rights will be violated whenever the People delay trial for a reasonable period of time to pursue evidence that would strengthen their case. Nor do we suggest that it is unacceptable for the People to delay a defendant's trial for a reasonable period of time while they attempt to obtain the cooperation of a codefendant in testifying against the defendant. Considering the particular circumstances of this case, however, as we must (see Taranovich, 37 N.Y.2d at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303 ), the People pursued a cooperation agreement with Armstead for 2½ years, even though they ***15 concede that Armstead repeatedly told them through his attorney that he would never testify against defendant. When those efforts failed, the People attempted for the following three years to obtain a conviction against Armstead in the hope that Armstead would decide to testify against defendant in exchange for a more lenient sentence. The People were repeatedly unsuccessful in that endeavor as well. After three mistrials, Armstead had been convicted of only criminal possession of a weapon in the second degree, he had been acquitted of second-degree murder, and the People were no closer to securing his testimony against defendant. The People "knew or should have known that there was no guarantee" ( Romeo, 12 N.Y.3d at 57, 876 N.Y.S.2d 666, 904 N.E.2d 802 ), or even any likelihood, that Armstead would agree to testify against defendant, or that they would promptly obtain a conviction against Armstead on a top count. We assume that their choice to proceed as they did was a good faith effort to obtain stronger evidence against defendant in order to secure his conviction. Nevertheless, by pursuing Armstead's testimony for several years, without any guarantee that they would secure it, instead of moving defendant's case to trial without Armstead's cooperation, "the People ran the risk of a speedy trial violation" ( id. ).
The Supreme Court's decision in Barker v. Wingo is particularly instructive on the good cause analysis, although there the Court ultimately concluded that Barker's speedy trial right was not violated, primarily because he did not assert that right and indeed "did not want a speedy trial" ( Barker, 407 U.S. at 534, 92 S.Ct. 2182 ). Unlike the federal speedy trial factors, the state Taranovich factors do not separately consider whether the defendant has asserted his or her right to a speedy trial (compare *313 Taranovich, 37 N.Y.2d at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303, with Barker, 407 U.S. at 528-530, 92 S.Ct. 2182 ). In any event, there is no support in the record for the conclusion that defendant intentionally acquiesced in the delay caused by the People and Armstead in order to gain a strategic advantage.
In Barker, the prosecution attempted to secure the cooperation of the codefendant, Manning, in testifying against Barker by convicting Manning first, but they had to try Manning several times over four years in order to convict him, meanwhile continually moving for adjournments of Barker's case (see Barker, 407 U.S. at 516-517, 92 S.Ct. 2182 ). The Supreme Court concluded that "the length of delay between arrest and trial-well over five years-was extraordinary" ( id. at 533, 92 S.Ct. 2182 ). With respect to the ***16 reason for the delay, the Court observed that "[o]nly seven months of that period can be attributed to a strong excuse, the illness of the ex-sheriff who was in charge of the investigation" ( id. at 533-534, 92 S.Ct. 2182 ). As to the prosecution's pursuit of Manning's testimony, the Court acknowledged that "[p]erhaps some delay would have been permissible under ordinary circumstances," but concluded that "more than four years was too long a period" ( id. at 534, 92 S.Ct. 2182 ).
We similarly conclude that, although we assume that the People acted in good faith in attempting to secure Armstead's testimony against defendant, and a reasonable period of delay to do so would have been supported by good cause, under all the circumstances of this case, five years was "too long a period" ( id. ), and the People therefore have not established good cause for the extraordinary delay. We therefore disagree with the Appellate Division that the second Taranovich factor favors the People.
C.
The third Taranovich factor requires us to consider the nature of the underlying charges against defendant (see Taranovich, 37 N.Y.2d at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303 ). It is undisputed that the charges against defendant, which included murder in the second degree, were serious. The People "may be expected to proceed with far more caution and deliberation than [they] would expend on a relatively minor offense" ( id. at 446, 373 N.Y.S.2d 79, 335 N.E.2d 303 ). "Of course, this is not to say that one's right to a speedy trial is dependent upon what one is charged with, but rather that the prosecutor may understandably be more thorough and precise in ... preparation for the trial" ( id. ). This factor therefore favors the People.
D.
With respect to the fourth Taranovich factor, we consider "whether or not there has been an extended period of pretrial incarceration" ( Taranovich, 37 N.Y.2d at 446, 373 N.Y.S.2d 79, 335 N.E.2d 303 ). Here, defendant was incarcerated for the entirety of the delay between his arrest and guilty plea, which amounted to more than six years. We therefore agree with the Appellate Division that this factor favors defendant (see Wiggins, 143 A.D.3d at 457, 39 N.Y.S.3d 395). To the extent the Appellate Division concluded, however, that the importance of this factor was diminished because "during a significant portion of this time, defendant was also under indictment for two ***17 other assault charges, one of which resulted in a conviction and sentence of 4½ years" ( id. ), we disagree.
Although we have held that the significance of the fourth Taranovich factor may be mitigated under certain circumstances, for example where the defendant *314 is incarcerated pursuant to a sentence imposed after conviction on unrelated charges (see Romeo, 12 NY3d at 58, 876 N.Y.S.2d 666, 904 N.E.2d 802 ; People v. Prosser, 309 N.Y. 353, 357, 130 N.E.2d 891 [1955] ), the same rationale will not necessarily apply to a defendant who is facing pending unrelated charges, inasmuch as the defendant is presumed to be innocent of those charges until convicted, and where, as here, it cannot be determined whether the defendant would have otherwise been subject to pretrial incarceration on those charges. Indeed, one of the assault charges upon which the Appellate Division relied to minimize the importance of defendant's lengthy pretrial incarceration was ultimately dismissed after pending for nearly four years. In June 2013, when defendant was sentenced on the assault conviction to 4½ years' imprisonment, he had already spent five years in pretrial incarceration. We reiterate, however, that even though the fourth Taranovich factor may have less significance where the defendant is incarcerated on unrelated charges, such imprisonment cannot provide good cause for the delay, as the People concede (see Singer, 44 N.Y.2d at 254, 405 N.Y.S.2d 17, 376 N.E.2d 179 ; Winfrey, 20 N.Y.2d at 141, 281 N.Y.S.2d 823, 228 N.E.2d 808 ).
In any event, the People have not demonstrated, on this record, that defendant would have been held on the unrelated pending charges alone if he was not incarcerated pending trial on the present charges (cf. Romeo, 12 N.Y.3d at 58, 876 N.Y.S.2d 666, 904 N.E.2d 802 ). The significance of the extended period of defendant's pretrial incarceration therefore was not mitigated.
E.
The fifth and final Taranovich factor requires us to consider prejudice to the defendant (see Taranovich, 37 N.Y.2d at 446-447, 373 N.Y.S.2d 79, 335 N.E.2d 303 ). The Appellate Division concluded that this factor favored the People because "defendant has not shown any prejudice as a result of the delay" (Wiggins, 143 A.D.3d at 458, 39 N.Y.S.3d 395). We disagree.
Defendant has not demonstrated any specific impairment to his defense as a result of the extraordinary delay. Nevertheless, both the United States Supreme Court and this Court have recognized that a demonstration of specific prejudice is not necessarily required (see Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 [1973], citing Barker, 407 U.S. at 532-533, 92 S.Ct. 2182 ;
***18 Taranovich, 37 N.Y.2d at 446-447, 373 N.Y.S.2d 79, 335 N.E.2d 303 ). The Supreme Court has stated that "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown' " ( Doggett, 505 U.S. at 655, 112 S.Ct. 2686, quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182 ). The courts therefore "generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify" ( id. ). Although "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, ... it is part of the mix of relevant facts, and its importance increases with the length of delay" ( id. at 656, 112 S.Ct. 2686 ). Similarly, in Taranovich we refused to "depart from the now traditional view in this court that where [under] the circumstances delay is great enough there need be neither proof nor fact of prejudice to the defendant" ( Taranovich, 37 N.Y.2d at 447, 373 N.Y.S.2d 79, 335 N.E.2d 303 ).
In addition, "prejudice to a defendant caused by delay in bringing him to *315 trial is not confined to the possible prejudice to his defense in those proceedings" ( Moore, 414 U.S. at 26-27, 94 S.Ct. 188 ).
"Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty" ( id. at 27, 94 S.Ct. 188 [internal quotation marks and citations omitted] ).
The People argue that under the federal Barker factors, the period of pretrial incarceration is not considered separately from the prejudice factor, and so federal courts consider the effects of pretrial incarceration as relevant to prejudice, whereas the Taranovich factors consider only whether the defense has been impaired due to the delay (see Taranovich, 37 N.Y.2d at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303 ). Whether we consider it as relevant to the lengthy period of pretrial incarceration or to the prejudice factor, it remains true that a lengthy period of pretrial incarceration detrimentally impacts an accused individual in ways that go beyond specific impairment of the defense.
***19 We therefore conclude that defendant suffered presumptive prejudice. This factor would weigh more heavily in defendant's favor if he had demonstrated specific impairment to his defense, but considering the extraordinary length of the delay and the fact that defendant was incarcerated during the entirety of that delay, this factor favors defendant.
III.
After evaluating all the relevant Taranovich factors under the circumstances of this particular case, we conclude that defendant's constitutional right to a speedy trial was violated. The delay was extraordinary, and although we assume that the People acted out of a good faith belief that Armstead's testimony would significantly enhance their case against defendant, their decision to pursue a strategy for Armstead's cooperation that continued to be unsuccessful after five years cannot justify that extraordinary delay. Although the serious nature of the charges favors the People, the lengthy period of pretrial incarceration, as well as the presumptive prejudice to defendant that resulted from the lengthy delay and pretrial incarceration, favor defendant.
Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed.