People v Gerard M. (2024 NY Slip Op 50176(U))

[*1]

People v Gerard M.

2024 NY Slip Op 50176(U)

Decided on February 23, 2024

Supreme Court, Bronx County

Busching, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 23, 2024
Supreme Court, Bronx County

The People of the State of New York

against
Gerard M., Defendant.

Ind. No. 1198/2021

Assistant District Attorney: William Browne
Defense Counsel: William Shanahan

Laurence E. Busching, J.

"Despite continuing efforts to undo past harms resulting from the debasing treatment of victims of sex crimes, particularly where, as here, the parties are known to each other, the structural barriers that victims confront in pursuing sexual assault prosecutions still persist." (People v Regan, 39 NY3d 459, 492 [2023, Singas, J., dissenting]).
The Allegations:
On April 13, 2009, the then 46-year-old complainant in this case ran out of a taxi she was traveling in with the defendant, her former boyfriend. She approached two police officers sitting in a patrol car and reported that he had sexually assaulted her. Upon seeing this, the defendant opened the door to the cab and ran off, with the two officers in pursuit. The officers were unable to apprehend the defendant. 
They returned to the complainant, informed her of what had happened, and escorted her to the police precinct. She was interviewed at the precinct and then brought to a hospital. At the hospital, she received an intrusive and embarrassing sexual assault examination. 
From the hospital, she went back to the precinct. As she testified, she "signed whatever needed to be signed" and "did everything by the book as they were telling me to do, as I was told to do." 
The defendant was not arrested that day or in the months thereafter. During that time, the detective assigned to the case apparently made minimal efforts to locate the defendant. Having failed to do so, he then filed a "probable cause I-card" that would lead to the defendant's arrest if another police officer came into contact with him. He then closed the case, making no further discernible efforts to apprehend the defendant. He has since left the police department and apparently is not reachable by the prosecution at this time. 
The complainant testified that five or six years later, in approximately 2015, she was coming back from lunch one day with a co-worker and saw the defendant standing in front of the building where she worked. She wrote "call the police" on a piece of paper and handed it to a colleague. She tried to hold the defendant there while the police came, but he ran away into a subway station. After this incident, she left her job. 
In December 2020, the case was assigned to a new detective, who quickly discovered that [*2]it was viable. The warrant squad finally located and arrested the defendant on August 9, 2021. Over twelve years after she filed her initial complaint, the complainant was called before the grand jury. 
There, she testified as follows: On April 13, 2009, she went to the defendant's apartment to assist him with paperwork he said he needed to cash his income tax check. When she arrived, at approximately 9:00 am, he came at her from behind, hit her with a large piece of wood in the head, and dragged her to the bedroom. He pinned her down, forcibly removed her pants and panties, and then inserted his penis into her vagina. She told him to stop, but he told her at various points that she was a "bitch" and that he loved her. He hit her so hard that she literally flew off the bed. As she fought back, he continued to beat her and then "chok[ed] me where I couldn't breathe." He tied her hands and told her, "You never sucked my dick, but you gonna suck my dick today." She was then made to perform oral sex on him. After he was done sexually assaulting her, he went into the kitchen and returned with lighter fluid and a lighter. He held them over her head and told her, "I'ma kill you, nobody gonna find your body." The complainant cried hysterically, "please, please don't do this." The complainant continued to talk to him, promising to feed him if he took her to her house. The defendant agreed. As they traveled to her house, she observed a police car with two officers inside. She jumped out of the cab and told them what happened. She testified that she received injuries to her head from the blows and to her neck from the defendant choking her. 
The Grand Jury indicted the defendant for Criminal Sexual Act in the First Degree and Rape in the First Degree on August 17, 2021. The defendant was arraigned on the indictment on September 13, 2001. Bail was set and made. 
Prompt Prosecution:
The defendant now moves for dismissal, claiming a violation of his due process rights. He bases his motion on the Court of Appeals decision in People v Regan, 39 NY3d 459 (2023). In Regan, the Court dismissed a rape conviction after trial based on a violation of the defendant's statutory and constitutional right to a prompt prosecution. As Judge Wilson noted for the majority, "This Court has 'long held that unreasonable delay in prosecuting a defendant constitutes a denial of due process of law,' and that '[a]n untimely prosecution may be subject to dismissal even though, in the interim, defendant was not formally accused, restrained or incarcerated for the offense." (Regan, 39 NY3d at 464-465, quoting People v Singer, 44 NY2d 241, 253 [1978] [internal quotation marks omitted]). 
People v Taranovich, 37 NY2d 442 [1975], set forth five factors for courts to consider in deciding such claims. "'[N]o one factor or combination of the factors . . . is necessarily decisive or determinative of the [prompt prosecution] claim, but rather the particular case must be considered in light of all the factors as they apply to it.'" (People v Wiggins, 31 NY3d 1,10 [2018], quoting Taranovich, 37 NY2d at 445). 
The Court will review each factor in turn, considering the defense's motion, the People's reply, the evidence adduced at a hearing held on this matter on October 27, 2023, and the arguments of counsel. 
(1) The Extent of the Delay 
The delay here has been extensive. In Regan, the dismissal was based on a four-year preindictment delay. In this case, the preindictment delay has been over twelve years. This factor strongly weighs in favor of dismissal. 
(2) The Reason for the Delay 
Even a lengthy preindictment delay may be excused where the prosecution establishes good cause. For example, in People v Decker (13 NY3d 12, 13 [2009]), the Court excused a fifteen-year preindictment delay where "the police found the evidence...to be of doubtful quality and decided not to prosecute." After reopening the case and applying novel scientific techniques to the evidence without success, the prosecutor decided to move forward with the case, particularly since "witnesses had overcome their addictions and were willing to testify." (id. at 13-14). 
Here, the evidence was as strong as it would ever get—the complainant's account of what happened, her prompt complaint, and her examination at a hospital all occurred on or about the date she filed the complaint in 2009. The only reasons this case appears not to have moved forward were because the detective did not easily locate the defendant and no one in the Police Department appears to have made additional efforts in the ensuing eleven years. According to the testimony, the Police Department has since created a new process by which cases where defendants have not been apprehended are regularly reviewed. In this case, though, after the detective closed the matter, the only way the case was going to be reopened was if the police happened upon the defendant in some other context, such as an arrest for a separate incident, and the detective squad was notified. That never occurred. 
There is no evidence that during the eleven-year period after the detective found probable cause existed to arrest the defendant and filed the i-card, the police made any affirmative efforts to locate the defendant. Nor was there any evidence that the defendant was attempting to evade apprehension. In fact, when the case was eventually re-assigned to a new detective in 2020, all the warrant squad had to do was identify a telephone number for the defendant and ask him to turn himself in. 
Given the lack of demonstrated good cause for the twelve-year delay in this case, this factor likewise weighs strongly in favor of dismissal. 
(3) The Nature of the Underlying Charge 
According to People v Johnson (39 NY3d 92 [2022]), this factor weighs both the seriousness and the complexity of the crime. This is a very serious case—a class B violent felony where the consequences for both complainant and defendant are life-altering. This has been evinced by the heavy penalties provided for by the legislature in the event of a conviction and by the strong feelings displayed by the complainant during calendar calls of this case.
On the other hand, it is not a complex case. The evidence consists largely of the testimony of the complainant and a limited number of potentially corroborating witnesses. The Court of Appeals addressed a similar scenario in Regan (39 NY3d at 471), holding "when a serious crime has been committed and there are no significant obstacles to prosecution, the interests of the People, the public, the victim and the defendant all favor prompt prosecution." Regan makes clear that in order to incentivize prompt action on the part of police and [*3]prosecutors, lengthy, unexplained delays in prosecution will result in dismissal, regardless of the impact on individual victims. "Our jurisprudence ensures that trials are fair and accurate; it also spurs prosecutors to take crime seriously and give all parties the prompt closure they need to move on with their lives." (Regan, 39 NY3d at 474). 
(4) Whether or Not There Has Been an Extended Period of Pretrial Incarceration 
Here, the defendant was only held briefly, making bail within a short time after his arrest. This factor weighs against dismissal. 
(5) Whether or Not There is Any Indication That the Defense Has Been Impaired by Reason of the Delay 
The defendant is not required to show prejudice (see Regan 39 NY3d at 472; Singer 44 NY2d at 254); however, here the prejudice is manifold. 
In addition to not promptly pursuing the arrest of the defendant, the police in this matter have lost the case file with the original paperwork. Some of that paperwork may be stored in computer files, but other paperwork is not. For example, the complainant testified that she wrote out a handwritten statement shortly after the crime describing what she alleges happened to her. This document has not been found. Additionally, the newly assigned detective has been unable to locate the names or any paperwork from the police officers the complainant first approached on the street and who pursued the defendant. All this information likely would have been in the original paper file, as would any handwritten notes the detective took. 
This material would be essential to conducting a fair trial in this matter. It cannot be replicated or replaced. And apparently, the originally assigned detective from 2009 cannot be located to testify about what was in the files or his memory of the case. The loss severely prejudices the defendant and could serve as a separate basis for a motion for dismissal under Criminal Procedure Law 245.80(2). 
Looking at the combination of factors set forth in Taranovich, as further expounded upon by cases like Regan, the case must be dismissed as having been brought in violation of the defendant's right to a prompt prosecution. 
In so doing, the Court expresses no opinion about whether the defendant committed the acts of which he is accused. Unfortunately, due to the delay in pursuing this case, and the loss of the complete paper file, a jury will never have the chance to hear the evidence. One thing that is clear is the complainant in this case did everything she was supposed to do and will nevertheless be deprived her day in court. 
The case is dismissed and sealed. 
This constitutes the Decision and Order of the Court.
Dated: February 23, 2024
Bronx, New York
Laurence E. Busching, AJSC