People v Tyson (2025 NY Slip Op 00545)

People v Tyson

2025 NY Slip Op 00545

Decided on January 31, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 31, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, MONTOUR, GREENWOOD, AND HANNAH, JJ.

720 KA 24-00376

[*1]THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,
v
KENNETH TYSON, DEFENDANT-RESPONDENT. 

MICHAEL J. KEANE, ACTING DISTRICT ATTORNEY, BUFFALO (MICHAEL J. HILLERY OF COUNSEL), FOR APPELLANT.
THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (ABIGAIL D. WHIPPLE OF COUNSEL), FOR DEFENDANT-RESPONDENT.

 Appeal from an order of the Erie County Court (Susan M. Eagan, J.), dated January 29, 2024. The order granted the motion of defendant to dismiss the subject indictment. 
It is hereby ORDERED that the order so appealed from is affirmed.
Memorandum: The People appeal from an order granting the motion of defendant to dismiss the indictment charging him with aggravated harassment of an employee by an incarcerated individual (Penal Law § 240.32) on the ground that he was denied his constitutional right of due process as a result of preindictment delay. Contrary to the People's contention, County Court did not err in granting the motion (see generally People v Taranovich, 37 NY2d 442, 444-445 [1975]).
Defendant was arrested on December 25, 2021 after an incident in which he threw urine at a correction officer attempting to enter defendant's cell while defendant was an inmate. He was indicted in February 2023. On November 24, 2023, defendant filed a motion to dismiss the indictment, arguing that his due process rights had been violated due to preindictment delay. On January 29, 2024, the court granted the motion and dismissed the indictment.
"By state and constitutional law, New York guarantees criminal defendants the right to a speedy trial and prompt prosecution" (People v Regan, 39 NY3d 459, 464 [2023]; see NY Const, art I, § 6; CPL 30.20). "[T]he State due process requirement of a prompt prosecution is broader than . . . the Sixth Amendment . . . [and] [i]n some respects the State rule is less rigid in its application than the right to due process recognized under the Federal Constitution" (Regan, 39 NY3d at 464 [internal quotation marks omitted]; see People v Singer, 44 NY2d 241, 253-254 [1978]). The Court of Appeals has "long held that unreasonable delay in prosecuting a defendant constitutes a denial of due process of law" and that "[a]n untimely prosecution may be subject to dismissal even though, in the interim, the defendant was not formally accused, restrained or incarcerated for the offense" (Singer, 44 NY2d at 253 [internal quotation marks omitted]). Further, there is no "fine distinction between due process violations based on delay in commencing prosecution[, i.e., preindictment delay,] and speedy trial violations, and the factors utilized to determine if a defendant's rights have been abridged are the same whether the right asserted is a speedy trial right or the due process right to prompt prosecution" (Regan, 39 NY3d at 465 [internal quotation marks omitted]). Those factors are: " '(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay' " (People v Wiggins, 31 NY3d 1, 9-10 [2018], quoting Taranovich, 37 NY2d at 445). " '[N]o one factor or combination of factors . . . is necessarily decisive or determinative of the [prompt prosecution] claim, but rather the particular case must be considered in light of all the [*2]factors as they apply to it' " (id. at 10, quoting Taranovich, 37 NY2d at 445; see Regan, 39 NY3d at 465) and, "if the first two factors favor [the] defendant, establishment of prejudice is not required to find a due process violation" (Regan, 39 NY3d at 471).
Under the circumstances, we conclude that the delay of 14 months between defendant's arrest and his indictment was unreasonable. The case was not complex and did not involve any unique theories of law. Additionally, the required evidence and witnesses—which consisted of employees of the Department of Corrections and Community Supervision (DOCCS) and evidence within DOCCS's possession—were available to the People at an early date (see e.g. People v Brown [appeal No. 2], 117 AD2d 978, 979-980 [4th Dept 1986]). We further reject the People's assertion that the laboratory testing caused a delay in this case. Upon receipt of a "Bioscience Request for Priority Case Status," the testing of the liquid thrown at the correction officer was completed within one month. Further, the People's delay in obtaining an indictment in this matter could not have been based upon the need for the lab report inasmuch as the report was completed before law enforcement filed the paperwork with the People. We reject the People's remaining allegation of delay for good cause (see generally Regan, 39 NY3d at 474).
We conclude that the third factor, i.e., the nature of the underlying crime, also weighs in defendant's favor. The legislature has deemed this offense to be a class E felony—the lowest level of felony offense (see Penal Law § 240.32). The third factor also requires that we consider the complexity of the crime and, for the reasons noted above, "the preparation to which the People attribute a delay for the prosecution of this crime was not complex" (Regan, 39 NY3d at 470).
We reject the People's contention that the fourth factor—i.e., whether defendant was subjected to a period of incarceration during the delay—weighs in their favor. Although defendant was serving a sentence on an unrelated charge at the time the incident occurred, defendant was placed in solitary confinement for seven months as a result of this incident. Further, where, as here, the defendant is imprisoned on another crime, that imprisonment "cannot excuse the delay" (Singer, 44 NY2d at 254).
Inasmuch as "the first two factors favor defendant, establishment of prejudice is not required to find a due process violation" (Regan, 39 NY3d at 471). In any event, the Court of Appeals, in addressing similar facts, has noted that the delay in charging an incarcerated individual with a subsequent crime may prolong their "incarceration, as a practical matter, by foreclosing the possibility of a concurrent sentence" (Singer, 44 NY2d at 253), and "may also interfere with [their] rehabilitation, particularly when [they are] already aware that [they are] suspected or 'known' to have committed the other offense" (id. at 254). That is exactly the prospect defendant faced here.
All concur except Curran and Greenwood, JJ., who dissent and vote to reverse in accordance with the following memorandum: We respectfully dissent and vote to reverse, deny the motion to dismiss, and reinstate the indictment because, in our view, defendant was not deprived of due process by unreasonable preindictment delay (see generally NY Const, art I, § 6). As the majority explains, in evaluating whether preindictment delay violates a defendant's constitutional rights, courts must consider the five factors set forth in People v Taranovich (37 NY2d 442 [1975]), i.e., "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" (id. at 445; see People v Regan, 39 NY3d 459, 465 [2023]). "[N]o one factor or combination of the factors . . . is necessarily decisive or determinative of the [due process] claim, but rather the particular case must be considered in light of all of the factors as they apply to it" (Regan, 39 NY3d at 465 [internal quotation marks omitted]; see Taranovich, 37 NY2d at 445). Additionally—and quite crucial to the majority's determination—we acknowledge "that if the first two factors favor defendant, establishment of prejudice is not required to find a due process violation" (Regan, 39 NY3d at 471; see People v Singer, 44 NY2d 241, 254 [1978]). Nonetheless, for the reasons that follow, we conclude that none of the Taranovich factors favor defendant and that, therefore, County Court erred in granting defendant's motion to dismiss the indictment.
With respect to the first Taranovich factor, i.e., the extent of the delay, we disagree with [*3]the majority that the 14-month delay here was unreasonable. Indeed, that conclusion is entirely inconsistent with this Court's voluminous precedent finding "similar periods of delay . . . to be within constitutional limits" (People v Jenkins, 2 AD3d 1390, 1390 [4th Dept 2003]; see e.g. People v Williams, 120 AD3d 1526, 1527 [4th Dept 2014], lv denied 24 NY3d 1090 [2014] [14 months]; People v Rivera, 120 AD3d 1602, 1603 [4th Dept 2014], lv denied 24 NY3d 1221 [2015] [13 months]; People v Pulvino, 115 AD3d 1220, 1222 [4th Dept 2014], lv denied 23 NY3d 1024 [2014] [21 months]; People v Perez, 85 AD3d 1538, 1538-1539 [4th Dept 2011] [11½ months]; People v Clark, 42 AD3d 957, 959 [4th Dept 2007], lv denied 9 NY3d 960 [2007] [11 months]; People v Cody, 30 AD3d 1068, 1068 [4th Dept 2006] [12 months]; People v Ortiz, 16 AD3d 1130, 1130 [4th Dept 2005], lv denied 5 NY3d 766 [2005] [10 months]; People v Beyah, 302 AD2d 981, 981 [4th Dept 2003], lv denied 99 NY2d 626 [2003] [12 months]; People v Lush, 249 AD2d 896, 896 [4th Dept 1998] [14 months]; see also People v Hill, 106 AD3d 1497, 1497 [4th Dept 2013] [15 months]; People v Robinson, 49 AD3d 1269, 1269-1270 [4th Dept 2008], lv denied 10 NY3d 869 [2008] [16 months]). In concluding that the delay here was unreasonable, the majority fails to acknowledge, let along distinguish, any of the aforementioned precedent. Indeed, it fails to even cite a single case supporting its conclusion that the 14-month delay here is unreasonable.
With respect to the second Taranovich factor, i.e., the reason for the delay, we also conclude that it weighs against defendant. The incident here occurred on December 25, 2021, but due to a laboratory backlog, testing of the brown liquid that was thrown on the correction officer was not completed until May 2, 2022. The majority's assertion that the testing was completed within one month of receipt of the "Bioscience Request for Priority Case Status" is not supported by the record. The People explained that they did not even learn about the December 2021 incident underlying the criminal charge here until August 2022, when the New York State Police delivered paperwork to them, which was after defendant was released on parole in July 2022—about six months prior to his February 2023 indictment. Until defendant was released on parole, he remained in the custody of the Department of Corrections and Community Supervision (DOCCS) serving his sentence of imprisonment on an unrelated crime. In short, it was only after August 2022 that the People could assemble the evidence against defendant to prove him guilty of aggravated harassment of an employee by an incarcerated individual (Penal Law § 240.32). The People's efforts to establish defendant's guilt included identifying multiple fact and expert witnesses, and obtaining video footage, photographs, and laboratory results of the liquid thrown onto the face of the correction officer. Defendant was indicted in February 2023, just six months after the People learned of the charge.
In light of the aforementioned facts, we conclude that the People acted "in good faith to defer commencement of the prosecution for further investigation or for other sufficient reasons" (Singer, 44 NY2d at 254; see Regan, 39 NY3d at 465), and there is no evidence that the delay—once they learned about the underlying incident—"was attributable to the People's inadvertence or a failure to prioritize the case" (People v Johnson, 211 AD3d 1633, 1635 [4th Dept 2022], lv denied 39 NY3d 1111 [2023]). To the contrary, as set forth above, the delay was largely caused by the efforts of the People "to acquire substantial corroborating evidence in order to prove defendant's guilt beyond a reasonable doubt" (People v Nazario, 85 AD3d 577, 577 [1st Dept 2011], lv denied 17 NY3d 904 [2011]).
To the extent the majority concludes that the People had no good reason for the delay on the basis that they possessed evidence maintained by DOCCS about the incident before they learned of the charge, we respectfully conclude that the majority is simply mistaken inasmuch as DOCCS is not a law enforcement agency and "the People cannot be deemed to be in constructive possession of that which DOCCS possesses" (People v Jenne, 224 AD3d 953, 957 [3d Dept 2024], lv denied 42 NY3d 927 [2024]; see generally People v Kelly, 88 NY2d 248, 253 [1996]; People v Walker, 232 AD3d 1214, 1217 [4th Dept 2024]). Consequently, we also cannot agree with the majority that the second factor favors defendant.
We further conclude that the third Taranovich factor, i.e., the nature of the underlying charge, also favors the People, and that the majority errs in concluding that the underlying offense here was not serious—contradicting the court's conclusion to the contrary. Specifically, we cannot agree with the majority to the extent that they suggest that the underlying offense is not "serious" inasmuch as it is a class E felony. The majority cites no case law to support that position. Indeed, to the contrary, we note the existence of cases where courts concluded that a [*4]class E felony was sufficiently serious for purposes of the third Taranovich factor (see e.g. People v McCollough, 198 AD3d 1023, 1024 [3d Dept 2021]; People v Montague, 130 AD3d 1100, 1101 [3d Dept 2015], lv denied 26 NY3d 1090 [2015]). To the extent that the majority focuses its analysis on the class of felony at issue as a proxy for its seriousness, it overlooks other serious aspects of the underlying incident. Specifically, we note that the incident occurred when the victim and other correction officers were entering defendant's cell for a welfare check, at which time defendant charged at the victim and threw brown liquid onto his face. As a result, the victim vomited and was treated with medication designed to flush his system of any diseases he may have come into contact with when he was hit by liquid potentially containing feces or urine.
In our view, the majority's analysis of the third factor fails to consider the underlying purpose of the statute criminalizing the conduct at issue here, which is to provide "special protections" to correction workers (People v Hernandez, 198 AD3d 545, 545 [1st Dept 2021], lv denied 37 NY3d 1161 [2022]). Indeed, it is clear that, in enacting this Penal Law provision, the legislature sought to curb "vile conduct" that was "particularly degrading in nature," and which "creat[ed] an enhanced health risk for employees" of correction facilities (Assembly Mem in Support, Bill Jacket, L 1996, ch 92). Specifically, the legislative history notes that, in enacting the relevant provision, the legislature sought "to deter and punish the outrageous and potentially life-threatening behavior of inmates or parolees." In other words, "[w]hile being pelted with human waste is inherently degrading and highly noxious, the prevalence of viral and bacterial agents contained in such bodily fluids makes [the underlying crime] a potentially life-threatening act" (Governor's Program Bill Mem, Bill Jacket, L 1996, ch 92). That is precisely the serious risk that the victim here faced when he was hit with the brown liquid that contained defendant's urine. In light of the nature of the crime and the underlying facts, we conclude that the conduct at issue here was serious such that the third Taranovich factor weighs in the People's favor.
Further, as the majority notes, the third Taranovich factor also requires courts to consider the complexity of the underlying crime. Contrary to the majority, however, we conclude that the necessary preparation for the prosecution of this crime was complex due to—as discussed above—the scientific testing necessary to precisely establish the contents of the liquid defendant threw at the victim (see generally Regan, 39 NY3d at 470; People v Wiggins, 31 NY3d 1, 16 [2018]). Indeed, given that the People would be required to prove, beyond a reasonable doubt, that defendant threw bodily fluids at the victim (Penal Law § 240.32), it is understandable that the People would proceed "with far more caution and deliberation" than with respect to a more minor offense, and that they would "be more thorough and precise" to specifically establish the nature of the fluid defendant threw (Wiggins, 31 NY3d at 16 [internal quotation marks omitted]).
With respect to the fourth factor, i.e., whether or not there has been an extended period of pretrial incarceration, defendant concedes in his brief that it does not weigh in his favor. We also note that defendant did not contend before the motion court that he was subjected to pretrial incarceration as a result of the underlying charge. Despite defendant's concession, the majority nevertheless theorizes, unsupported by any precedent, that the fourth factor weighs in defendant's favor because his placement in the special housing unit due to the violation of prison rules equates to pretrial incarceration. In reaching that conclusion, however, the majority ignores the fact that there is nothing the People could have done to negate defendant's confinement in the special housing unit, even if they had managed to indict him sooner.
Finally, with respect to the fifth Taranovich factor, i.e., whether there is any indication that the defense has been impaired by reason of the delay, the majority primarily concludes that because the first two factors favored defendant, there is no need for defendant to establish prejudice (see Regan, 39 NY3d at 471). In our view, however, the fifth factor also does not weigh in defendant's favor. Crucially, nowhere does defendant even assert that the delay impaired or prejudiced his ability to prepare his defense. Instead, he argues that his time spent in "solitary confinement" was prejudicial, as is the possibility defendant will be imprisoned on the subject charge, all of which will interfere with the rehabilitative process. As defendant concedes, that argument is unsupported by precedent. In any event, " 'there is a complete lack of any evidence that the defense was impaired by reason of the delay' " in this case (People v Edmead, 197 AD3d 937, 938 [4th Dept 2021], lv denied 37 NY3d 1096 [2021], reconsideration denied 37 NY3d 1160 [2022]; see People v Works, 211 AD3d 1574, 1575 [4th Dept 2022], lv denied 39 NY3d 1114 [2023]; People v Hewitt, 144 AD3d 1607, 1608 [4th Dept 2016], lv denied 28 NY3d 1185 [2017]).
The majority asserts—to the extent that it analyzes the fifth Taranovich factor—that defendant was prejudiced by the delay because it effectively prolonged his incarceration to the extent it foreclosed any possibility of him receiving a concurrent sentence (see generally Singer, 44 NY2d at 253). In our view, however, to the extent the possibility of a concurrent sentence was concerned, the majority ignores the fact that defendant, given his extensive criminal history, was indisputably facing a mandatory prison sentence if he was convicted of the underlying crime, and that any reduction of the charge is precluded by law (see CPL 220.10 [5] [h]). The majority does not explain how a concurrent sentence would be a possibility for defendant, a second felony offender (see Penal Law § 70.25 [2-a]), even if there had been no delay in the prosecution of the underlying offense.
Consequently, because none of the Taranovich factors weigh in defendant's favor, we conclude that the court erred in granting defendant's motion to dismiss the indictment (see Jenkins, 2 AD3d at 1390-1391).
Entered: January 31, 2025
Ann Dillon Flynn
Clerk of the Court