[904 NE2d 802, 876 NYS2d 666]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ANTHONY
ROMEO, Respondent.

Argued January 7, 2009; decided February 11, 2009

## POINTS OF COUNSEL

*Thomas J. Spota, District Attorney*, Riverhead (*Michael Blakey* of counsel), for appellant. Respondent was not denied his constitutional right to a speedy trial. (*Klopfer v North Carolina*, 386 US 213; *Barron v Mayor & City Council of Baltimore*, 7 Pet [32 US] 243; *People v Prosser*, 309 NY 353; *Doggett v United States*, 505 US 647; *Barker v Wingo*, 407 US 514; *People v Taranovich*, 37 NY2d 442; *People v Watts*, 57 NY2d 299; *People v Vernace*, 96 NY2d 886; *People v Konieczny*, 2 NY3d 569; *People v Blakley*, 34 NY2d 311.)

*Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.*, New York City (*Barry A. Bohrer* and *Kristy Watson Milkov* of counsel), for respondent. I. The extensive postindictment delay deprived Mr. Romeo of his constitutional right to a speedy trial. (*Klopfer v North Carolina*, 386 US 213; *People v Singer*, 44 NY2d 241; *People v Staley*, 41 NY2d 789; *Strunk v United States*, 412 US 434; *People v Taranovich*, 37 NY2d 442; *Barker v Wingo*, 407 US 514; *People v Hansen*, 95 NY2d 227; *People v Lopez*, 6 NY3d 248; *People v Callahan*, 80 NY2d 273; *Doggett v United States*, 505 US 647.) II. The delay is unquestionably attributable to the People. (*Smith v Hooey*, 393 US 374; *Barker v Wingo*, 407 US 514; *People v Prosser*, 309 NY 353; *People v McLaurin*, 38 NY2d 123; *People v Wilt*, 43 AD2d 658; *United States v Pomeroy*, 822 F2d 718; *United States v McConahy*, 505 F2d 770; *United States v McDonald*, 172 F Supp 2d 941; *People v Singer*, 44 NY2d 241; *United States v Walton*, 814 F2d 376.) III. Mr. Romeo repeatedly asserted his speedy trial rights throughout an almost 19-year period of delay. (*Barker v Wingo*, 407 US 514;

*People v Rodriguez,* 50 NY2d 553; *People v Bancroft,* 23 AD3d
850.) IV. The People's inordinate delay prejudiced Mr. Romeo.
(*Doggett v United States,* 505 US 647; *Moore v Arizona,* 414 US
25; *People v Taranovich,* 37 NY2d 442; *People v Singer,* 44 NY2d
241; *Barker v Wingo,* 407 US 514; *United States v McDonald,*
172 F Supp 2d 941; *People v Waldron,* 6 NY3d 463; *People v Ver-
nace,* 96 NY2d 886; *People v Lesiuk,* 81 NY2d 485.) V. No
plausible claim can be made that the "nature of the underlying
charge" is the cause of the People's delay in prosecuting Mr. Ro-
meo. (*Barker v Wingo,* 407 US 514; *People v Taranovich,* 37
NY2d 442; *People v Santiago,* 209 AD2d 885.)

## OPINION OF THE COURT

Acting Chief Judge CIPARICK.

The question raised by this appeal is whether the People's
lengthy postindictment delay occasioned by delaying their pros-
ecution in favor of a Canadian prosecution violated defendant's
constitutional right to a speedy trial. Applying the five-factor
speedy trial analysis articulated in *People v Taranovich* (37
NY2d 442 [1975]), we conclude that it did and therefore affirm.

### I

In November 1985, a fatal shooting occurred in the victim's
Fire Island home, in Suffolk County. Ballistics evidence taken
over a year later indicated that a gun belonging to defendant
was the murder weapon. In February 1987, Suffolk County
Court ordered defendant to provide a DNA sample to compare
with DNA obtained from hair the victim had in his hand when
he died. Defendant's attorney scheduled a date for his client to
surrender to Suffolk County law enforcement officials and to
provide a sample of his DNA for comparative testing.

Two days before the scheduled date, March 5, defendant,
armed with a gun, absconded to Canada in his car. On March 8,
a Canadian constable pulled the car over for speeding. Defen-
dant pulled his gun, and shot and killed the officer. He then
discarded the firearm and reentered the United States, making
his way to Boston, where he was arrested at Logan International
Airport while attempting to board a plane to Florida. He was
arraigned on the Canadian warrant before a federal magistrate
and held without bail pending extradition to Canada. Pursuant
to court order, Suffolk County law enforcement authorities came
to Boston and obtained hair and blood samples from defendant
that matched the hair strands found in the victim's hand.

On March 27, a Suffolk County grand jury indicted defendant on two counts of murder in the second degree (Penal Law § 125.25 [1], [2]) and the People filed a warrant to detain him in the United States. On April 1, while defendant was still in federal custody, he made the first of a series of formal demands to the People for an immediate arraignment and trial on the Suffolk County indictment. He made a similar demand to the United States Department of Justice, asserting his constitutional right to a speedy trial.

On May 15, a Canadian official wrote a letter to the Suffolk County District Attorney's Office stating options available under the existing extradition treaty between the United States and Canada that would enable defendant's return to the United States after a Canadian conviction. The letter was encouraging in tone, but did not offer assurance that a prompt return would be arranged.

On May 29, defendant, still in federal custody, but now in Missouri, filed an order to show cause in Suffolk County Court demanding a writ of habeas corpus to be produced for arraignment in Suffolk County before his extradition to Canada. The People argued that defendant would suffer no unusual delay in facing trial in Suffolk County by being tried in Canada first— apparently under the mistaken belief that defendant would immediately be brought back to Suffolk County after his trial in Canada. On June 17, Suffolk County Court denied defendant's application, holding that the People could defer prosecution on the Suffolk County murder charges. The court cautioned the People, however, that any delay caused by allowing the Canadian prosecution to proceed first could result in a violation of defendant's rights to a speedy trial, redress for which defendant would be free to pursue at a later time.

The People still elected to defer prosecution. Defendant was extradited to Canada, where he was tried and convicted of the constable's murder. He received a sentence of imprisonment of 25 years to life with parole eligibility in 2011. The People never sought extradition to Suffolk County.

On July 23, 1999, 12 years after having been indicted for the Fire Island murder, defendant moved in Suffolk County Court to dismiss the murder indictment on constitutional and statutory speedy trial grounds. The court denied the application. Six years later, in November 2005, defendant was brought back to Suffolk County following amendments to the Canada-United

States Extradition Treaty that allowed for the "borrowing" of defendant from Canada. Defendant was arraigned on the Suffolk County indictment and, in February 2006, entered a guilty plea to manslaughter in the first degree and was sentenced to a term of imprisonment of 7 to 21 years to be served concurrently with the Canadian sentence. Defendant appealed, asserting that the 19-year postindictment delay deprived him of his constitutional right to a speedy trial.

The Appellate Division reversed the conviction and dismissed the indictment, holding that the People's delay violated defendant's right to a speedy trial (47 AD3d 954 [2008]). The court took into consideration only the 12-year delay in prosecution, from 1987 until 1999, when defendant filed his speedy trial motion. The Appellate Division reasoned that the People's decision to defer their prosecution in favor of the Canadian prosecution and failure to make an extradition request to Canada, even though it was unclear that Canada would have denied the request, caused the extended delay in prosecution. A Judge of this Court granted the People leave to appeal (10 NY3d 869 [2008]) and we now affirm.

## II

A criminal defendant's right to a speedy trial is guaranteed both by the Sixth Amendment to the United States Constitution (US Const 6th, 14th Amends) and by statute (CPL 30.20; Civil Rights Law § 12). Violation of this right results in dismissal of an indictment (*see Strunk v United States*, 412 US 434, 439-440 [1973]; *People v Taranovich*, 37 NY2d 442, 444 [1975]).

The term "speedy trial" must be evaluated in the context of a sensitive balancing of several factors, with no one factor being dispositive of a violation, and with no formalistic precepts by which a deprivation of the right can be assessed (*see Doggett v United States*, 505 US 647, 651 [1992]; *Taranovich*, 37 NY2d at 444-445). The five factors to be considered are: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charges; (4) any extended period of pretrial incarceration; and (5) any impairment of defendant's defense (*see Taranovich*, 37 NY2d at 445). The balancing of these factors must be performed carefully in light of the particular facts in each case (*see People v Vernace*, 96 NY2d 886, 887 [2001]).

The first factor, the extent of the delay, is of critical importance because "all other factors being equal, the greater the delay the more probable it is that the accused will be harmed thereby" (*Taranovich*, 37 NY2d at 445). There is no specific temporal period by which a delay may be evaluated or considered "presumptively prejudicial" (*see Doggett*, 505 US at 652). Where the delay is lengthy, an examination of the other factors is triggered, and the length of delay becomes one factor in that inquiry (*see id.*).

Here, the delay between the indictment and the filing of the speedy trial motion was an extraordinary period of 12 years (*see Doggett*, 505 US at 658 [8½-year delay was "extraordinary" (internal quotation marks omitted)]; *Barker v Wingo*, 407 US 514, 533 [1972] [5½-year delay was "extraordinary"]; *People v White*, 32 NY2d 393, 398 [1973] [four-year delay violated the defendant's right to a speedy trial]; *People v Winfrey*, 20 NY2d 138 [1967] [4½-year delay]). Although not in itself decisive, the 12-year delay requires close scrutiny of the other factors, especially the question of why the delay occurred. It was the People's burden to bring defendant to trial in a timely fashion (*see Smith v Hooey*, 393 US 374, 383 [1969]). The genesis of this extraordinary delay was the People's decision to defer their prosecution, allowing defendant to be sent abroad for a foreign murder prosecution, and then failing to make an extradition request to Canadian authorities, which, if granted, might have mitigated the length of the delay.

Soon after the filing of this indictment, defendant made repeated demands to be arraigned in Suffolk County before being sent to Canada. Additionally, during a hearing to determine whether defendant could be prosecuted in Canada first, Suffolk County Court cautioned the People that their decision might cause a speedy trial violation. Thus, even prior to their decision to defer prosecution, the People had been placed on notice that their decision might violate defendant's constitutional speedy trial rights, as defendant was already making claims that he was being prejudiced by the delay. In the face of these warnings, the People still allowed defendant to be prosecuted abroad before even arraigning him on the Suffolk County murder indictment.

The People argue that the correspondence they received from Canadian officials justified their decision to defer prosecution and the ensuing lengthy delay. Defendant does not suggest that the People acted with bad faith, which obviously would weigh

heavily in favor of dismissal of the indictment (*see Doggett*, 505 US at 656). But even if acting under the mistaken belief that defendant's presence could be obtained in Suffolk County promptly after the Canadian trial, the People still knew or should have known that there was no guarantee that defendant would be brought back to Suffolk County in a timely manner. They were advised that the extradition treaty in effect would have enabled the People to request defendant's extradition, which the Canadian authorities had the discretion to grant or defer until the completion of defendant's sentence. The People were required to, at the very minimum, make such a request for defendant's return. By deferring prosecution and choosing not to attempt to extradite defendant, the People ran the risk of a speedy trial violation.

The fact that a defendant is incarcerated outside of the state makes it incumbent upon the People to make diligent, good faith efforts to secure his presence in the state for arraignment and trial (*see Hooey*, 393 US 374, 383 [1969]). Where the defendant is incarcerated in another country, failing to make an extradition request has been one factor that courts have viewed as evidencing a lack of diligent efforts on the part of the prosecution in bringing defendant to trial promptly (*see United States v Pomeroy*, 822 F2d 718, 721-722 [8th Cir 1987]; *United States v McConahy*, 505 F2d 770, 773-774 [7th Cir 1974]). Of course, where the foreign country demonstrates its clear intention to deny an extradition request, the People are under no obligation to make a futile gesture. But nothing in this record demonstrates that a request here would have been futile, and thus this case differs from cases where an extradition request would clearly fall on deaf ears (*see United States v Blanco*, 861 F2d 773, 778 [2d Cir 1988] [Colombian government repeatedly refused to extradite Colombian nationals]; *United States v Walton*, 814 F2d 376, 379 [7th Cir 1987] [Swedish officials denied informal requests from the United States State Department to extradite the suspect]). An extradition request might have led to cooperation in securing defendant's return to Suffolk County (*see Pomeroy*, 822 F2d at 721-722 [because it was at least possible that Canada would have honored an extradition request, the prosecution's failure to make an extradition request evidenced a lack of diligent efforts to secure the defendant]).

The third factor applies to the underlying charges. Although this case involves the grave offense of murder, the level of offense does not trump a defendant's right to a speedy trial. As we stated in *Taranovich*:

"Of course, this is not to say that one's right to a speedy trial is dependent upon what one is charged with, but rather that the prosecutor may understandably be more thorough and precise in his preparation for the trial of a class C felony than he would be in prosecuting a misdemeanor" (37 NY2d at 446).

Here, the People do not claim that any delay was a result of time needed for pretrial preparation. The 12-to-19-year delay is entirely the result of defendant's incarceration in Canada.

The fourth factor, whether there has been an extended period of pretrial incarceration, is not significant in this case. Defendant was initially detained on a warrant filed by the Canadian government. He has been held at all times thereafter pursuant to the Canadian charges, never on the Suffolk County indictment alone. At no point during his prosecution on the Suffolk County charges has he faced additional incarceration from those charges.

The fifth factor is whether or not there is any indication that the defense has been impaired by reason of the delay, such as difficulty in gathering evidence and locating witnesses (see Barker, 407 US at 532). Such concerns are exacerbated where the defendant is incarcerated in a foreign jurisdiction.

Here, it is highly likely that the defense was "impaired" (see Hooey, 393 US at 379-380) by defendant's incarceration for many years in a foreign prison where it would have been difficult for him to participate in his own defense, confer with counsel and contact witnesses. Defendant claims that he had psychiatric problems and might have presented a defense based on a lack of criminal responsibility by reason of mental disease or defect. This type of defense would have required defendant to establish his mental incapacity at the time of the offense. The ability to do this was clearly hampered by his incarceration abroad.

We conclude that the Appellate Division properly balanced the Taranovich factors and that the prejudice caused by the postindictment delay, as a result of the People's decision to allow defendant to be tried in Canada first and the subsequent decision not to seek defendant's extradition to Suffolk County, violated defendant's constitutional right to a speedy trial.

Accordingly, the order of the Appellate Division should be affirmed.

Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order affirmed.