■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREG CANTONI, Appellant. [34 NYS3d 454]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Blumenfeld, J.), rendered November 10, 2011, convicting him of attempted robbery in the second degree, reckless endangerment in the second degree, criminal possession of stolen property in the third degree, and unauthorized use of a vehicle in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, the count of the indictment charging the defendant with attempted robbery in the second degree is dismissed, and the matter is remitted to the Supreme Court, Queens County, for a hearing in accordance herewith and thereafter for a new determination of those branches of the defendant's motions pursuant to CPL 30.30 which were to dismiss the indictment on the ground that he was denied his statutory right to a speedy trial, and, if the subject branches of the motions are denied, for a new trial on the remaining counts of the indictment.

Contrary to the People's contention, the defendant's chal-

lenge to the legal sufficiency of the evidence supporting his conviction of attempted robbery in the second degree on the ground that the People failed to prove his larcenous intent is preserved. "[A] general objection . . . is sufficient to preserve an issue for [appellate] review when [as here] the trial court 'expressly decided the question raised on appeal' " (*People v Graham*, 25 NY3d 994, 997 [2015], quoting CPL 470.05 [2]; *see People v Smith*, 22 NY3d 462, 465 [2013]; *People v Richberg*, 123 AD3d 946 [2014]).

"The standard for reviewing the legal sufficiency of evidence in a criminal case is whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' " (*People v Contes*, 60 NY2d 620, 621 [1983], quoting *Jackson v Virginia*, 443 US 307, 319 [1979] [emphasis omitted]). As relevant here, "[i]n order to sustain a conviction for robbery . . . the People must establish that [the] defendant had the requisite . . . larcenous intent," which means "the 'intent to deprive another of property or to appropriate the same to himself or to a third person' " (*People v Medina*, 18 NY3d 98, 103 [2011], quoting Penal Law § 155.05 [1]; *see* Penal Law § 160.00).

The concepts of "deprive" and "appropriate" " 'connote a purpose . . . to exert *permanent or virtually permanent control over the property* taken, or to cause *permanent or virtually permanent loss* to the owner of the possession and use thereof' " (*People v Medina*, 18 NY3d at 105, quoting *People v Jennings*, 69 NY2d 103, 118 [1986] [internal quotation marks omitted]). For that reason, "[t]he mens rea element of larceny . . . is simply not satisfied by an intent temporarily to use property without the owner's permission" (*People v Jennings*, 69 NY2d at 119).

Here, the People presented proof that, in attempting to evade police officers who were trying to pull him over, the defendant crashed his vehicle, exited the car, and approached a white Honda being driven by a young woman. The defendant put one hand on the door handle and put his fingers into the opening above the window, which was lowered slightly. The defendant then retracted his hand, fled on foot, and was apprehended. From this evidence, a jury could rationally infer that the defendant intended to take the Honda to escape the police. To prove robbery, however, the People had to do more than prove that the defendant intended to take the car to escape the police (*cf.* Penal Law § 165.08). They had to prove, in addition, that he intended to either "exert *permanent or virtually permanent*

*control over the property*" (*People v Medina*, 18 NY3d at 105), or to "dispose of [it] in such manner or under such circumstances as to render it unlikely that [the] owner [would] recover [it]" (Penal Law § 155.00 [3]). The People did not offer any evidence from which such an inference could be made (*see People v Montgomery*, 39 AD2d 889 [1972]; *cf. People v Watkins*, 117 AD3d 1092, 1093 [2014]; *People v Brightly*, 148 AD2d 623 [1989]). Contrary to the People's contention, the mere fact that there is no affirmative evidence of an intent on the part of the defendant to only deprive the owner of the car temporarily does not satisfy the People's burden of proving an intent to deprive the owner of her property permanently. Accordingly, the conviction of attempted robbery in the second degree must be reversed, and that count of the indictment dismissed.

Prior to trial, the defendant made two motions pursuant to CPL 30.30 to dismiss the indictment on the ground that he was deprived of his statutory and constitutional rights to a speedy trial. The motions were denied without a hearing. After weighing the relevant factors, the Supreme Court properly denied, without a hearing, that branch of the defendant's second CPL 30.30 motion which asserted violation of his constitutional right to a speedy trial (*see People v Allen*, 134 AD3d 730 [2015]; *People v Chance*, 105 AD3d 758 [2013]). However, the Supreme Court erred in summarily denying those branches of the defendant's motions which alleged a violation of his statutory speedy trial rights.

Pursuant to CPL 30.30 (1) (a), a court must grant a motion to dismiss an indictment charging a felony offense where the People are not ready for trial within six months of commencement of the criminal action, which, in the present case, is a period of 182 days. Where, as here, the defendant meets his initial burden of showing the existence of a delay greater than six months, the burden shifts to the People to prove that certain periods within that time should be excluded (*see People v Allard*, 113 AD3d 624, 625 [2014]; *People v Headley*, 100 AD3d 775, 776 [2012]).

After excluding certain time periods, the motion court concluded that the People were chargeable with 133 days of delay, a finding that the People do not dispute. The defendant contends, however, that the People should have been charged with 234 days of delay. The defendant first challenges the Supreme Court's determination that the People should be charged only 14 days for an adjournment from February 3, 2010 to February 26, 2010, arguing that the People were chargeable with the entire 23-day period. As to this period of

postreadiness delay, the court was correct in excluding the nine-day period that exceeded the People's requested adjournment (*see People v Boumoussa*, 104 AD3d 863 [2013]; *see generally People v Anderson*, 66 NY2d 529, 535 [1985]).

However, the motion court should have charged the People with a 33-day adjournment from April 16, 2010 to May 19, 2010, when the defendant was supposed to appear in Queens Supreme Court on the instant charge. To the extent the People argue on appeal that this time period was excludable under CPL 30.30 (4) (a), that claim is unpreserved for appellate review, as the People did not assert that exclusion in opposition to the motion (*see* CPL 470.05 [2]). In their opposition papers, the People argued only that this period was excludable under CPL 30.30 (4) (e), which pertains to a "period of delay resulting from detention of the defendant in another jurisdiction provided the district attorney is aware of such detention and has been diligent and has made reasonable efforts to obtain the presence of the defendant for trial." Although the People demonstrated that, on April 16, 2010, the defendant was detained in Nassau County on pending charges, the People failed to establish, or raise an issue of fact as to, their diligence in attempting to secure the defendant's presence for the Queens County appearance. The People, and the motion court in excluding this period, recounted the efforts the People made after April 16, 2010, to have the defendant produced from Nassau County. However, that evidence does not conclusively demonstrate that the People made diligent efforts to produce the defendant *for* the April 16, 2010, Queens County appearance. Further, although the People cite to a vague promise on the part of the Nassau County court, prior to April 16, 2010, to return the defendant to Queens County when his presence was no longer required in Nassau County, the People cannot claim to have exercised due diligence where they did not inquire, prior to the appearance date, as to whether the defendant had, in fact, been returned to Queens County. Under these circumstances, the People should have been charged with the 33-day delay, bringing their total chargeable time to 166 days.

As to the disputed period of delay from June 30, 2010 to August 12, 2010, the People failed to conclusively demonstrate that this time period was excludable under CPL 30.30 (4) (a) or (e). First, the People did not conclusively demonstrate diligent efforts, such as service of an order to produce, to secure the defendant's presence in Queens County on June 30, 2010. Further, it cannot be said from this record whether, had the People followed the statutory procedure for having the defend-

ant produced from Nassau County (*see* CPL 560.10), the application would have been refused for the reason that the defendant was required to appear in court in Nassau County on that date (*see People v Romeo*, 12 NY3d 51, 57 [2009]). Among other things, the evidence does not demonstrate whether the defendant was produced in court in Nassau County for an appearance on June 30, 2010. For that reason, there is also an issue of fact as to the applicability of CPL 30.30 (4) (a). Moreover, there are questions of fact as to whether the People needed 43 days in order to produce the defendant after June 30, or whether, with due diligence, they could have produced him at an earlier date.

Similarly, the People failed to conclusively demonstrate that the 10-day adjournment they requested on September 20, 2010 was excludable under CPL 30.30 (4) (e). (The five-day period which exceeded the People's adjournment request is not chargeable to them [*see People v Boumoussa*, 104 AD3d at 863]). On the record and in their opposition papers, the People merely advised, summarily, that, on some unknown date, they had served an order to produce. This minimal showing raised an issue of fact, but did not meet the People's burden of showing due diligence (*see People v Bryant*, 139 AD2d 750 [1988]; *People v Wojciechowski*, 132 AD2d 586, 587-588 [1987]).

Accordingly, the Supreme Court erred in summarily denying the defendant's motions to dismiss the indictment for violation of his statutory speedy trial rights, and we remit the matter to the Supreme Court, Queens County, for a hearing in accordance herewith and a new determination thereafter (*see People v Santos*, 68 NY2d 859, 861 [1986]; *People v Allard*, 113 AD3d at 625-626; *People v Wilson*, 188 AD2d 671, 672 [1992]; *People v Wojciechowski*, 132 AD2d at 587-588).

In the event that the defendant's motion to dismiss the indictment is denied, after said hearing, a new trial must be held as to the remaining counts of the indictment in light of the prosecutor's summation misconduct. While the defendant's claim regarding the comments made by the prosecutor during summation is partially unpreserved for appellate review, we nevertheless reach the defendant's unpreserved contentions in the exercise of our interest of justice jurisdiction (*see* CPL 470.15 [6] [a]).

"[S]ummation is not an unbridled debate in which the restraints imposed at trial are cast aside so that counsel may employ all the rhetorical devices at his [or her] command" (*People v Ashwal*, 39 NY2d 105, 109 [1976]; *see People v Singh*, 128 AD3d 860, 863 [2015]). "Rather, '[t]here are certain well-

defined limits' " (*People v Singh*, 128 AD3d at 863, quoting *People v Ashwal*, 39 NY2d at 109). "Among other things, '[the prosecutor] must stay within the four corners of the evidence and avoid irrevelant and inflammatory comments which have a tendency to prejudice the jury against the accused' " (*People v Singh*, 128 AD3d at 863, quoting *People v Spann*, 82 AD3d 1013, 1015 [2011] [internal quotation marks omitted]).

Here, the prosecutor repeatedly shifted the burden of proof to the defendant, first, by telling the jurors that they could only form a reasonable doubt if they believed the defense offered by the defendant (*cf. People v Singh*, 128 AD3d at 863; *People v Spann*, 82 AD3d at 1015), and then, by repeatedly telling the jurors or implying that they would have to find that the People's witnesses lied in order to believe that defense (*see People v Pagan*, 2 AD3d 879, 880 [2003]; *People v Langford*, 153 AD2d 908, 909-910 [1989]; *People v Bonaparte*, 98 AD2d 778 [1983]). In essence, one of the prosecutor's themes in his summation was that the jurors had to determine whether they believed the People's witnesses or whether they believed the defendant (who testified), and only if they believed the defendant could they form a reasonable doubt about the defendant's guilt. Such an impression was clearly improper and prejudicial. The prosecutor additionally denigrated the defense (*see People v Spann*, 82 AD3d at 1015; *People v Gordon*, 50 AD3d 821, 822 [2008]; *People v Brown*, 26 AD3d 392, 393 [2006]; *see also People v Singh*, 128 AD3d at 863; *People v Pagan*, 2 AD3d at 880), and vouched for the credibility of the police witnesses based upon their position as law enforcement officers (*see People v Singh*, 128 AD3d at 863; *People v Mehmood*, 112 AD3d 850, 853 [2013]; *People v Brown*, 26 AD3d at 393; *People v Pagan*, 2 AD3d at 880).

We agree with the defendant that the cumulative effect of these improper comments deprived him of a fair trial (*see People v Singh*, 128 AD3d at 863; *People v Mehmood*, 112 AD3d at 853; *People v Spann*, 82 AD3d at 1015; *People v Gordon*, 50 AD3d at 822; *People v Brown*, 26 AD3d at 393; *People v Pagan*, 2 AD3d at 880-881). Accordingly, in the event that the indictment is not dismissed pursuant to CPL 30.30, a new trial is required. Hall, J.P., Austin, Sgroi and LaSalle, JJ., concur.