People v Regan (2021 NY Slip Op 04161)





People v Regan


2021 NY Slip Op 04161


Decided on July 1, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 1, 2021

108167 111602
[*1]The People of the State of New York, Respondent,
v
Andrew J. Regan, Appellant.

Calendar Date:March 18, 2021

Before:Garry, P.J., Lynch, Clark, Aarons and Colangelo, JJ.

Richard V. Manning, Parishville, for appellant, and appellant pro se.
Gary M. Pasqua, District Attorney, Canton (Matthew L. Peabody of counsel), for respondent.



Clark, J.
Appeals (1) from a judgment of the County Court of St. Lawrence County (Richards, J.), rendered May 11, 2015, upon a verdict convicting defendant of the crime of rape in the first degree, and (2) by permission, from an order of said court (Catena, J.), entered August 14, 2018, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, after a hearing.
In August 2013, defendant was charged by indictment with one count of rape in the first degree based upon allegations that, in August 2009, he engaged in sexual intercourse with the victim without her consent. Defendant was convicted as charged following a jury trial, and County Court (Richards, J.) sentenced him to a prison term of 12 years, followed by 15 years of postrelease supervision. Defendant thereafter moved, pursuant to CPL 440.10, to vacate the judgment of conviction. In August 2018, after conducting a hearing solely on the issue of whether there was a conflict of interest in counsel's representation of defendant, County Court (Catena, J.) denied the motion. Defendant appeals from the judgment of conviction and, by permission, from the August 2018 order.
Defendant contends that he was denied his statutory and constitutional rights to a speedy trial. We turn first to defendant's statutory claim. Pursuant to CPL 30.30 (1) (a), the People are required to declare their readiness for a felony trial within six months of the commencement of the criminal action. "Whether the People have satisfied this obligation is generally determined by computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods of delay that are excludable under the terms of the statute and then adding to the result any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion" (People v Cortes, 80 NY2d 201, 208 [1992]; accord People v Rousaw, 151 AD3d 1179, 1179 [2017]).
The record reflects that defendant was arrested on February 13, 2013. Thereafter, in March 2013, an Assistant District Attorney emailed defense counsel asking whether defendant would like to waive his speedy trial rights so that she could convey a plea offer. By letter dated April 17, 2013, defense counsel informed the People that defendant waived his right to a speedy trial, stating that it was his "understanding" that a plea offer would be extended. Ultimately, however, a plea offer was never extended to defendant. Defendant was indicted on August 15, 2013 on the charge of rape in the first degree, and the People declared their trial readiness on August 29, 2013. The People thereafter requested an adjournment on April 22, 2014 to pursue possible new charges and, on May 1, 2014, defendant was indicted on the charge of sexual abuse in the first degree. On June 9, 2014, after the two indictments were joined, the People announced their trial readiness on both charges.[FN1]
Defendant argues that his April 2013 speedy trial waiver was conditional upon the People extending a plea offer and that, absent the extension of an offer, the waiver is invalid. We disagree. Our review of defendant's waiver reveals that, contrary to defendant's contention, it was not contingent upon receiving a plea offer from the People. Rather, defendant's waiver was given in contemplation of plea negotiations. Accordingly, the time chargeable to the People between the period of defendant's arrest and the submission of his speedy trial waiver is 63 days. The 48 days between the People's request for an adjournment on April 22, 2014 and their announcement of trial readiness on all charges on June 9, 2014 is also chargeable to the People (see People v Niver, 41 AD3d 961, 963 [2007], lv denied 9 NY3d 924 [2007]). Although the charge of sexual abuse in the first degree was dismissed for jurisdictional reasons, the People's trial readiness announcement in June 2014 on all charges was not illusory, contrary to defendant's contention (see id.; compare People v Weaver, 34 AD3d 1047, 1049 [2006], lv denied 8 NY3d 928 [2007]). Given that the total time chargeable to the People was 111 days, which does not exceed the six-month period provided for in CPL 30.30 (1) (a), defendant's statutory right to a speedy trial was not violated (see generally People v Waldron, 6 NY3d 463, 467-468 [2006]).
As for his constitutional claim, defendant asserts that the protracted preindictment delay of four years violated his constitutional speedy trial right. In determining whether a defendant's constitutional right to a speedy trial has been violated by undue preindictment delay, courts must engage in a balancing of five factors, namely, "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" (People v Taranovich, 37 NY2d 442, 445 [1975]; see People v Decker, 13 NY3d 12, 14 [2009]). "The balancing of these factors must be performed carefully in light of the particular facts in each case" (People v Romeo, 12 NY3d 51, 55 [2009], cert denied 558 US 817 [2009], citing People v Vernace, 96 NY2d 886, 886 [2001]).
Here, the preindictment delay of four years was lengthy and the reasons for the delay proffered by the People certainly left something to be desired. However, the People's submissions established that the investigation was ongoing, that they were acting in good faith and that there were valid reasons for portions of the delay. Additionally, the charge of rape in the first degree can only be characterized as serious (see People v Bradberry, 68 AD3d 1688, 1690 [2009], lv denied 14 NY3d 838 [2010]; People v Beliard, 67 AD3d 427, 427 [2009], lv denied 15 NY3d 918 [2010]). Furthermore, there was no period of pretrial incarceration [*2]and there is no indication that the defense was prejudiced by the delay. In fact, defendant became aware of the accusations against him shortly after the offense occurred. In our view, the seriousness of the offense, the fact that defendant was not incarcerated pretrial and the absence of any demonstrated prejudice outweigh the four-year delay and the shortcomings in the People's reasons therefor (see People v Decker, 13 NY3d at 15-16; People v Innab, 182 AD3d 142, 145-146 [2020], lv denied 35 NY3d 1027 [2020]; People v Mattison, 162 AD3d 905, 906-907 [2018], lv denied 32 NY3d 1006 [2018]). Accordingly, upon weighing the relevant factors, we find that there was no violation of defendant's constitutional right to a speedy trial resulting from preindictment delay.
Defendant also challenges the verdict as not being supported by legally sufficient evidence or, alternatively, as being against the weight of the evidence. Defendant's legal sufficiency argument is unpreserved because he failed to renew his motion to dismiss following the close of all proof (see People v Stone, 185 AD3d 967, 968 [2020], lv denied 35 NY3d 1097 [2020]; People v Henry, 169 AD3d 1273, 1273 n [2019], lv denied 33 NY3d 1070 [2019]). "Nevertheless, this Court's weight of the evidence review requires us to determine whether the elements of the charged crime were proven beyond a reasonable doubt" (People v Johnson, 183 AD3d 77, 85 [2020] [citations omitted], lv denied 35 NY3d 993 [2020]; see People v Walker, 190 AD3d 1102, 1103 [2021], lvs denied ___ NY3d ___ [May 7, 2021]). Under a weight of the evidence analysis, we must first determine whether, based on all of the credible evidence, a different verdict would not have been unreasonable and, if not, we then "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; see People v McMillan, 185 AD3d 1208, 1209 [2020], lvs denied 35 NY3d 1112, 1114 [2020]).
As charged here, "[a] person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [w]ho is incapable of consent by reason of being physically helpless" (Penal Law § 130.35 [2]). "'Physically helpless' means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00 [7]). "[A] person who is sleeping is 'physically helpless' for the purposes of consenting to sexual intercourse, particularly where the sleep was drug and alcohol induced" (People v Williams, 40 AD3d 1364, 1366 [2007], lv denied 9 NY3d 927 [2007]; see People v Forney, 183 AD3d 1113, 1114 [2020], lv denied 35 NY3d 1065 [2020]; People v Shepherd, 83 AD3d 1298, 1298-1299 [2011], lv denied 17 NY3d 809 [2011]).
At trial, the victim testified that, on August 8, 2009, she and her boyfriend attended an outdoor [*3]daytime wedding and that, after the wedding, from roughly 9:30 p.m. through 2:00 a.m., they patronized several bars with defendant and his then-girlfriend. The victim stated that the foursome returned to the home that she shared with her boyfriend around 2:30 a.m. and that she invited defendant and his girlfriend to sleep on the couch. The victim asserted that she felt intoxicated and tired from a long day of being outside and that she therefore fell asleep quickly. The victim testified that, after falling asleep, the next thing she remembered was waking up and feeling unable to breathe as a result of a weight on top of her. She stated that, as her eyes were "refocusing," she felt a bare stomach against her bare stomach and then saw defendant's face. The victim asserted that she was scared and that, upon seeing defendant's face, she did not do or say anything. According to the victim, after defendant rolled off of her, she reached down between her legs and realized that her underwear had been pushed to the side and was wet. She stated that her vagina felt swollen and that something consistent with semen dripped down her leg from inside her vagina. The victim testified, without equivocation, that she never agreed to any kind of sexual contact with defendant and that she was not conscious at the time that his penis was placed inside her vagina.
The victim stated that she immediately disclosed the incident to her boyfriend, who also testified at trial and confirmed that the victim reported the encounter to him shortly after it happened. The evidence demonstrated that, after the incident, the victim went to the hospital, where a sexual assault nurse examiner administered a rape kit. The evidence established that an anal swab taken from the victim was positive for the presence of sperm and that DNA recovered from the swab matched that of defendant. Additionally, DNA obtained from the victim's underwear and a vaginal swab from the victim revealed mixture profiles consistent with DNA from defendant and the victim's boyfriend.
Defendant testified on his own behalf at trial and gave a different version of his encounter with the victim. Specifically, defendant testified that the victim met him outside of the bathroom and ultimately led him into her bedroom, where they engaged in consensual sex. He stated that, roughly one week earlier, he and the victim had also had a sexual encounter, although they did not have intercourse that time. Defendant's then-girlfriend, now wife, testified that an investigator arrived at defendant's apartment on August 9, 2009 and that, after defendant spoke with the investigator, defendant informed her that he had consensual sex with the victim several hours earlier.
Considering the vastly different accounts offered by the victim and defendant, it would not have been unreasonable for the jury to have credited defendant's account and acquitted him of rape in the first degree (see People v Walker, 190 AD3d at 1104[*4]; People v Johnson, 183 AD3d at 87; People v Lopez-Aguilar, 64 AD3d 1037, 1038 [2009], lv dismissed 13 NY3d 940 [2010]). However, the jury clearly rejected defendant's version of events in favor of that presented by the victim. Viewing the evidence in a neutral light and deferring to the jury's assessment of witness credibility, we find that defendant's conviction of rape in the first degree is supported by the weight of the evidence (see People v Granger, 166 AD3d 1377, 1379 [2018]; People v Horton, 162 AD3d 1118, 1120 [2018]).
Defendant further contends that County Court (Richards, J.) should have granted his motion for a mistrial, which was premised upon his contention that the prosecutor committed misconduct by repeatedly posing questions relating to his selective silence.[FN2] As a general matter, the People may not use a defendant's pretrial silence on their direct case or to impeach the defendant should she or he testify at trial (see People v Chery, 28 NY3d 139, 145 [2016]; People v Williams, 25 NY3d 185, 191 [2015]). The Court of Appeals, however, has "recognized a narrow exception to the general rule," which allows a defendant who provides a voluntary statement to law enforcement to be cross-examined, for impeachment purposes, as to his or her omission of exculpatory information at the time that he or she spoke to law enforcement (People v Chery, 28 NY3d at 144; see People v Savage, 50 NY2d 673, 679 [1980], cert denied 449 US 1016 [1980]).
Here, testimony from an investigator, as well as defendant, established that defendant voluntarily spoke to the investigator on the morning after the incident and that he categorically denied having a sexual encounter with the victim. At trial, however, defendant contradicted his prior statement to law enforcement, testifying that he did have sexual intercourse with the victim and that it was consensual. Under these circumstances, which presents an issue of apparent first impression (see People v Williams, 25 NY3d at 192), we find that it was permissible for the prosecutor to cross-examine defendant as to his prior voluntary statement to the investigator and his failure to assert at that time that his sexual contact with the victim was consensual (see People v Chery, 28 NY3d at 145; People v Johnson, 183 AD3d at 89). Accordingly, contrary to defendant's assertion, his right to selective silence was not violated.
The remaining arguments raised by defendant in connection with his appeal from the judgment of conviction require little discussion. Defendant argues that defense counsel made numerous trial errors, which had the cumulative effect of depriving him of the effective assistance of counsel. We, however, are not convinced, as many of the objections that defendant faults defense counsel for failing to make would likely have been unsuccessful, and our review of defense counsel's representation as a whole demonstrates that defendant received meaningful representation (see People v Watson, 183 [*5]AD3d 1191, 1195-1196 [2020], lv denied 35 NY3d 1049 [2020]; People v Bostic, 174 AD3d 1135, 1138 [2019], lv denied 34 NY3d 1015 [2019]). Further, we do not find the sentence imposed upon defendant to be harsh or excessive, and we discern no abuse of discretion or extraordinary circumstances that would warrant a reduction of that sentence in the interest of justice (see People v Wright, 149 AD3d 1417, 1418 [2017]; People v Stearns, 72 AD3d 1214, 1219 [2010], lv denied 15 NY3d 778 [2010]).
Turning to defendant's CPL article 440 motion, defendant asserts that he was deprived of conflict-free representation as a result of defense counsel's simultaneous representation of the District Attorney on an unrelated matter. Following a hearing, County Court (Catena, J.) found — and the record confirms — that defendant was made aware of the conflict and the risks attendant thereto and that, with such awareness, defendant thereafter unequivocally indicated that he wanted defense counsel to continue representing him. Accordingly, County Court properly denied this aspect of defendant's motion (see People v Gomberg, 38 NY2d 307, 316 [1975]).
County Court denied the remainder of defendant's CPL article 440 motion on the sole basis that defendant had appealed from the judgment of conviction and that there were sufficient facts appearing on the record of appeal to resolve the remaining issues. CPL 440.10 (2) (b) — the provision relied upon by County Court in summarily denying the remainder of defendant's motion — states that a court must deny a motion to vacate a judgment of conviction where "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."
County Court correctly concluded that sufficient facts appeared on the record in defendant's appeal from the judgment of conviction with respect to the purported speedy trial violations and the alleged instances of prosecutorial misconduct, so as to permit adequate review of such issues upon the appeal (see CPL 440.10 [2] [b]). However, County Court erred in concluding, under CPL 440.10 (2) (b), that sufficient facts appeared in the record on appeal to resolve defendant's claim of actual innocence and his claim of ineffective assistance of counsel based upon defense counsel's purported failure to investigate witnesses. Inasmuch as defendant tendered affidavits from various individuals in support of his actual innocence claim, which he contended constituted newly discovered evidence, an examination of nonrecord facts was required to resolve defendant's actual innocence claim (see e.g. People v Lanier, 191 AD3d 1094, 1095 [2021]). Defendant's claim that defense counsel was ineffective for failing to investigate possible witnesses is likewise based, in part, on facts outside the record (see People v Taylor, 156 AD3d 86, 91-92 [2017], lv denied [*6]30 NY3d 1120 [2018]). Accordingly, County Court mistakenly concluded that CPL 440.10 (2) (b) prohibited it from examining defendant's claims of actual innocence and ineffective assistance (see People v Drayton, 189 AD3d 1888, 1891-1892 [2020], lv denied 36 NY3d 1119 [2021]).
That said, County Court never addressed the merits of defendant's actual innocence and ineffective assistance of counsel claims, including whether such claims should be summarily granted or denied or warranted a hearing. Although the parties have briefed these issues, our review power does not extend to issues not ruled upon by the trial court (see CPL 470.15 [1]; People v LaFontaine, 92 NY2d 470, 474 [1998]; People v Romero, 91 NY2d 750, 753-754 [1998]; People v Drayton, 189 AD3d at 1892; see generally People v Francis, 34 NY3d 464, 470 [2020]). The matter must therefore be remitted for consideration of these issues (see People v Drayton, 189 AD3d at 1892).
To the extent that we have not expressly addressed any of defendant's arguments, they have been examined and found to be without merit.
Garry, P.J., and Lynch, J., concur.
Aarons, J. (dissenting).
Among the many contentions raised, defendant argues that his constitutional speedy trial rights were violated — a claim that the majority rejects. We disagree with the majority's view on this point and, therefore, respectfully dissent.
"In assessing whether a defendant's constitutional right to a speedy trial has been violated by alleged preindictment delay, courts must consider the extent of the delay, the reason for the delay, the nature of the charges against the defendant, whether there has been an extended period of pretrial incarceration and whether the defense has been impaired by reason of the delay" (People v Acevedo, 179 AD3d 1397, 1399 [2020] [internal quotation marks and citations omitted]; see People v Heimroth, 181 AD3d 967, 969-970 [2020], lv denied 35 NY3d 1027 [2020]). "The balancing of these factors must be performed carefully in light of the particular facts in each case" (People v Romeo, 12 NY3d 51, 55 [2009] [citation omitted], cert denied 558 US 817 [2009]).
The delay here of four years was substantial (see People v Jones, 187 AD3d 934, 937 [2020], lv denied 36 NY3d 1051 [2021]; People v Rogers, 157 AD3d 1001, 1005 [2018], lv denied 30 NY3d 1119 [2018]) — a point not disputed by the People. Critically, as County Court (Richards, J.) found, the People failed to proffer a good reason for the delay. In opposing defendant's motion, the People cited to the continuing investigation of the matter and their unfamiliarity with the procedure in obtaining a DNA sample from defendant. The court rejected this reason, correctly finding that the procedure was "neither novel nor complicated" (cf. People v Clarke, 28 NY3d 48, 53 [2016]).
Even if any unfamiliarity with the warrant application process to obtain defendant's DNA could be credited, the People still failed to adequately explain why, after the [*7]victim's initial report, more than three years passed before an order for defendant's DNA was sought. The record reflects that a substantial portion of this time period was devoted to having conversations as whether to proceed with a warrant and how to obtain one. Although the People, when opposing defendant's renewed motion, represented that it was their first time applying for a search warrant for a DNA sample, there is no indication in the record that the People tried to educate themselves about the process or that they encountered any difficulties in preparing the application. Notably, once the warrant application was made, the warrant was issued on the same day and defendant's DNA was submitted to the laboratory three days later. As such, to accept the People's excuse would be to sanction their ignorance of the investigative process, all at defendant's expense.
We note that the record indicates that the charged crime was serious, defendant was not incarcerated prior to trial and his defense was not impaired by the delay — factors weighing against defendant. Nevertheless, "no one factor or combination of the factors is necessarily decisive or determinative of the speedy trial claim" (People v Acevedo, 179 AD3d at 1400 [internal quotation marks, ellipsis and citation omitted]). When the delay is lengthy, closer scrutiny of the other factors — in particular, the reason for the delay — is required (see People v Romeo, 12 NY3d at 56). Indeed, in a case of great delay, the factor of whether a defendant suffered any prejudice is "of least significance" (People v Santiago, 209 AD2d 885, 888 [1994]).
That said, when scrutinizing the relevant factors holistically, we believe dismissal of the indictment is an appropriate remedy, especially in view of the length of the delay and the People's utter failure to establish good cause for such delay (see People v Montague, 130 AD3d 1100, 1102-1103 [2015], lv denied 26 NY3d 1090 [2015]; People v Edwards, 278 AD2d 659, 659 [2000]; People v Rodriguez, 205 AD2d 417, 417 [1994], lv denied 84 NY2d 872 [1994]; People v Charles, 180 AD2d 868, 872 [1992]; compare People v Young, 190 AD3d 1087, 1093-1094 [2021], lvs denied 36 NY3d 1100, 1102 [2021]; People v Rogers, 157 AD3d at 1006; People v Jones, 188 AD2d 745, 746 [1992], lv denied 81 NY2d 888 [1993]). Furthermore, even if defendant was aware of the possible accusations against him and to the extent that the People rely on plea negotiations as contributing to any delay, "this does not excuse the People's responsibility for assuring prompt prosecution" (People v Montague, 130 AD3d at 1103). Accordingly, in our view, defendant's renewed motion to dismiss the indictment should have been granted.
Colangelo, J., concurs.
ORDERED that the judgment is affirmed.
ORDERED that the order is modified, on the law, by reversing so much thereof as denied defendant's CPL 440.10 motion predicated upon claims of actual innocence and ineffective assistance of counsel[*8]; matter remitted to the County Court of St. Lawrence County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: The second count of the indictment charging sexual abuse in the first degree was dismissed prior to jury selection as jurisdictionally defective.

Footnote 2: Defendant failed to preserve his remaining claims of prosecutorial misconduct, which primarily take issue with comments made by the People during opening and closing statements (see People v Bush, 184 AD3d 1003, 1008 [2020], lv denied 35 NY3d 1093 [2020]; People v Horton, 181 AD3d 986, 996 [2020], lv denied 35 NY3d 1045 [2020]).