People v Shrubsall (2023 NY Slip Op 03610)

People v Shrubsall

2023 NY Slip Op 03610

Decided on June 30, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 30, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, CURRAN, BANNISTER, AND OGDEN, JJ.

402 KA 20-01124

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
WILLIAM C. SHRUBSALL, ALSO KNOWN AS ETHAN MACLEOD, DEFENDANT-APPELLANT. 

WILLIAM C. SHRUBSALL, DEFENDANT-APPELLANT PRO SE. 
BRIAN D. SEAMAN, DISTRICT ATTORNEY, LOCKPORT (LAURA T. JORDAN OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Niagara County (Richard C. Kloch, Sr., A.J.), rendered July 29, 2020. The judgment convicted defendant, upon his plea of guilty, of bail jumping in the first degree and criminal contempt in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon his plea of guilty, of bail jumping in the first degree (Penal Law § 215.57) and criminal contempt in the second degree (§ 215.50 [3]). The charges arose after defendant, who was released on bail while on trial in May 1996 under an indictment charging him with the class B felony of sodomy in the first degree (Penal Law former
§ 130.50 [2]) and the class D felony of sexual abuse in the first degree (§ 130.65 [2]), failed to appear on the final day of trial, left an ostensible suicide note in which he suggested that he intended to kill himself by plunging over Niagara Falls, and instead absconded to Canada. The trial proceeded in defendant's absence. The jury rendered a verdict finding defendant guilty of, as relevant here, sexual abuse in the first degree (§ 130.65 [2]), and defendant was sentenced in absentia in November 1996 to, inter alia, an indeterminate term of 2&frac13; to 7 years of imprisonment.
Defendant was subsequently charged in a March 1997 indictment with bail jumping in the first degree (Penal Law § 215.57). In the meantime, defendant assumed various aliases while living in Canada, and Canadian law enforcement later arrested defendant after he committed several violent physical and sexual attacks against women. The People obtained a superseding indictment in May 2000 charging defendant with bail jumping in the first degree (§ 215.57) and criminal contempt in the second degree (§ 215.50 [3]). In December 2001, following his convictions for various crimes in Canada, including robbery, possession of a weapon, aggravated sexual assault, and aggravated assault, defendant was declared a dangerous offender and sentenced to an indeterminate period of detention in a Canadian penitentiary up to life imprisonment, subject to periodic review for parole.
Eventually, defendant was granted parole and, in late January 2019, defendant was turned over by Canadian authorities to Niagara County law enforcement at the United States-Canada border. Defendant was arraigned the following day on the superseding indictment and Supreme Court reiterated that defendant was required to serve the sentence imposed on the sex offenses conviction following the trial from which defendant had absconded. The court subsequently denied defendant's motion insofar as it sought to dismiss the bail jumping count as defective, granted the People's motion to amend the superseding indictment and, following a hearing, denied defendant's motion insofar as it sought to dismiss the superseding indictment on the ground that the People violated his constitutional right to a speedy trial.
Defendant thereafter pleaded guilty to the counts in the superseding indictment. The court, consistent with the agreed-upon sentencing cap, sentenced defendant, in relevant part, to an indeterminate term of two to six years of imprisonment on the bail jumping count, which was to run consecutively to the sentence imposed on the prior sex offenses conviction. Defendant appeals, and we now affirm.
Defendant contends that the bail jumping count in the superseding indictment is jurisdictionally defective, and the court thus erred in granting the People's motion to amend. We reject that contention.
"An indictment is jurisdictionally defective only if it does not effectively charge the defendant with the commission of a particular crime—for instance, if it fails to allege that the defendant committed acts constituting every material element of the crime charged" (People v D'Angelo, 98 NY2d 733, 734-735 [2002]; see People v Iannone, 45 NY2d 589, 600 [1978]). In that regard, "incorporation [in an indictment] by specific reference to the statute [defining the crime charged] operates without more to constitute allegations of all the elements of the crime" (D'Angelo, 98 NY2d at 735; see People v Sanford, 148 AD3d 1580, 1581 [4th Dept 2017], lv denied 29 NY3d 1133 [2017]).
Here, the superseding indictment provided that defendant was charged with the crime of bail jumping in the first degree in violation of Penal Law § 215.57, and alleged that defendant committed acts constituting every material element of the crime charged—i.e., that defendant, having been released by court order on bail, upon condition that he would subsequently appear personally in connection with an indictment pending against him, which charged him with the commission of a class B felony, did not appear personally on the required date or voluntarily within 30 days thereafter (see § 215.57). Contrary to defendant's contention, although the superseding indictment later incorrectly specified that the class D felony of sexual abuse in the first degree (§ 130.65 [2]), rather than the class B felony of sodomy in the first degree (Penal Law former § 130.50 [2]), was the class B felony on the pending indictment, that error constituted a mere "misnomer in the designation of the crime" that "d[id] not render [the superseding] indictment jurisdictionally defective" with respect to the bail jumping count (People v Rodriguez, 97 AD3d 246, 252 [1st Dept 2012], lv denied 19 NY3d 1028 [2012]; see People v Bishop, 115 AD3d 1243, 1244 [4th Dept 2014], lv denied 23 NY3d 1018 [2014], reconsideration denied 24 NY3d 1082 [2014]).
Defendant further contends that the People's extraordinary postindictment delay in prosecuting the case deprived him of his constitutional right to a speedy trial, and the court thus erred in denying his motion insofar as it sought to dismiss the superseding indictment on that ground. We reject that contention.
"By statute and constitutional law, New York guarantees criminal defendants the right to a speedy trial and prompt prosecution" (People v Regan, — NY3d &mdash, &mdash, 2023 NY Slip Op 01353, *3 [2023]; see NY Const, art I, § 6; CPL 30.20; People v Vernace, 96 NY2d 886, 887 [2001]; People v Staley, 41 NY2d 789, 791 [1977]). Courts "analyze constitutional speedy trial claims using the five factors set forth in People v Taranovich (37 NY2d 442 [1975]): '(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay' " (People v Wiggins, 31 NY3d 1, 9-10 [2018]). "The Taranovich framework is a holistic one—that is, 'no one factor or combination of the factors . . . is necessarily decisive or determinative of the speedy trial claim' " (People v Johnson, 39 NY3d 92, 96 [2022]; see Wiggins, 31 NY3d at 10; People v Romeo, 12 NY3d 51, 55 [2009], cert denied 558 US 817 [2009]). "[T]he factors must be evaluated 'on an ad hoc basis,' " which "mean[s] that the analysis must be tailored to the facts of each case" (Johnson, 39 NY3d at 96; see Romeo, 12 NY3d at 55).
With respect to the first factor, "the extent of the delay[] is of critical importance because 'all other factors being equal, the greater the delay the more probable it is that the accused will be harmed thereby' " (Romeo, 12 NY3d at 56). "Where the delay is lengthy, an examination of the other factors is triggered, and the length of delay becomes one factor in that inquiry" (id.). Here, we agree with defendant that the delay between the superseding indictment and his arraignment thereon was an extraordinary period of 18½ years (see id.). Thus, "[a]lthough not in itself [*2]decisive, the [18½]-year delay requires close scrutiny of the other factors, especially the question of why the delay occurred" (id.; see Wiggins, 31 NY3d at 10-11).
Regarding the second factor, the record establishes that the genesis of the extraordinary delay here was defendant's decision to absent himself from his ongoing sex offenses trial, leave a false suicide note, and abscond to Canada where, while using various aliases, he committed several violent physical and sexual attacks against women, thereby resulting in his convictions for various crimes, designation as a dangerous offender, and corresponding lengthy term of imprisonment in Canada (cf. Romeo, 12 NY3d at 56). Thus, contrary to defendant's assertion, the court properly concluded that the initial reason for the delay was attributable solely to defendant (see People v Keating, 183 AD3d 595, 596 [2d Dept 2020], lv denied 35 NY3d 1113 [2020]; People v Lara, 165 AD3d 563, 563 [1st Dept 2018], lv denied 32 NY3d 1206 [2019]).
Nonetheless, "[t]he fact that a defendant is incarcerated outside of the state makes it incumbent upon the People to make diligent, good faith efforts to secure [the defendant's] presence in the state for arraignment and trial" (Romeo, 12 NY3d at 57). "Where[, as here,] the defendant is incarcerated in another country, failing to make an extradition request has been one factor that courts have viewed as evidencing a lack of diligent efforts on the part of the prosecution in bringing defendant to trial promptly" (id.). If, however, "the foreign country demonstrates its clear intention to deny an extradition request, the People are under no obligation to make a futile gesture" (id.; see People v Barba, 135 AD3d 950, 951 [2d Dept 2016], lv denied 27 NY3d 1065 [2016]).
Contrary to defendant's assertion, we conclude that the People demonstrated that they made diligent, good faith efforts to secure defendant's presence in the state for arraignment and trial on the superseding indictment (see Keating, 183 AD3d at 596; People v Turner, 286 AD2d 514, 515 [2d Dept 2001], lv denied 97 NY2d 658 [2001]; cf. Romeo, 12 NY3d at 56-57). The evidence presented at the hearing establishes that the People for several years made diligent efforts in good faith to secure defendant's presence in New York by preparing and revising, in consultation with the Office of International Affairs of the United States Justice Department (OIA), i.e., the agency responsible for securing the return of international fugitives, the requisite paperwork to request defendant's extradition under the subject treaty with Canada. The record also establishes that, even after a change in the treaty that allowed for a temporary surrender of a fugitive for prosecution in the requesting country, the People subsequently reached "a reasoned conclusion that [submitting a formal extradition request to Canada] would be futile" based on, inter alia, OIA's advisements and the People's assessment of the low likelihood that Canada would extradite defendant for a bail jumping prosecution (United States v Khan, 575 F Supp 3d 490, 502 [SD NY 2021]; see Turner, 286 AD2d at 515; cf. Romeo, 12 NY3d at 57; see generally United States v Diacolios, 837 F2d 79, 83 [2d Cir 1988]). In our view, under the circumstances of this case, "a formal request for extradition" was not required "before due diligence c[ould] be found to have existed" (Diacolios, 837 F2d at 83). Consequently, we conclude that, even after the change in the treaty, the People acted reasonably and in good faith by continuing to revise the extradition paperwork and consult with OIA but ultimately deciding to maintain the arrest warrant for bail jumping and await defendant's deportation while "operating under the assumption that he [w]ould not be extradited" (Lara, 165 AD3d at 564; cf. Romeo, 12 NY3d at 56-57).
Next, "[t]he third Taranovich factor requires us to consider the nature of the underlying charges against defendant" (Wiggins, 31 NY3d at 16). The nature of the underlying crime "can refer to both its severity and, relatedly, the complexity and challenges of investigating the crime and gathering evidence to support a prosecution" (Johnson, 39 NY3d at 97; see Regan, — NY3d at &mdash, 2023 NY Slip Op 01353, *6). Here, although we agree with defendant that preparation for prosecution on the superseding indictment was not complex and the bail jumping count was, as the People and the court acknowledged, less significant than the undoubtably serious crimes committed in Canada, we note that defendant correctly concedes that bail jumping in the first degree, a class D felony (Penal Law
§ 215.57), is not trivial. Moreover, tailoring our analysis of this factor to the particular facts of the case (see Johnson, 39 NY3d at 96; Romeo, 12 NY3d at 55), we cannot ignore that the bail jumping count arose from defendant's attempt to avoid being held accountable and sentenced for the undoubtably serious sex offenses he committed against a 17-year-old female (see generally Johnson, 39 NY3d at 97). We thus reject defendant's assertion that the third factor favors him.
We agree with the parties that "[t]he fourth factor, whether there has been an extended period of pretrial incarceration, is not significant in this case" inasmuch as defendant was held at all times pursuant to the Canadian charges and defendant did not face any relevant pretrial incarceration on the superseding indictment (Romeo, 12 NY3d at 58; see Johnson, 39 NY3d at 98).
"The fifth and final Taranovich factor requires us to consider prejudice to the defendant" (Wiggins, 31 NY3d at 17). In analyzing that factor, courts consider whether "there is any indication that the defense has been impaired by reason of the delay, such as difficulty in gathering evidence and locating witnesses" (Romeo, 12 NY3d at 58). Generally, "[s]uch concerns are exacerbated where the defendant is incarcerated in a foreign jurisdiction" (id.).
Here, however, we conclude that "there is no indication that . . . defendant was prejudiced in any way by the delay that he himself caused by his fugitivity" (People v Rodriguez, 199 AD3d 838, 839 [2d Dept 2021], lv denied 38 NY3d 953 [2022] [internal quotation marks omitted]; see Lara, 165 AD3d at 564). Contrary to defendant's assertion that he "factually[ ]demonstrated" actual prejudice in the form of a lost opportunity for concurrent sentences, we conclude on this record that there was "no demonstrated possibility of a concurrent sentence being available to defendant by an earlier disposition of the [bail jumping] matter" (People v Allende, 206 AD2d 640, 642 [3d Dept 1994], appeal dismissed 84 NY2d 921 [1994]; see generally Penal Law § 70.25 [2-c]). We further conclude that, contrary to defendant's assertion, he was not prejudiced by the death of a potential witness inasmuch as she was a noncritical witness whose loss cannot have contributed to any inadequacy in defendant's defense (see People v Mann, 200 AD2d 910, 910-911 [3d Dept 1994]). Moreover, although "a demonstration of specific prejudice is not necessarily required" inasmuch as " 'excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify' " (Wiggins, 31 NY3d at 17), that presumption is undermined here inasmuch as it is unlikely that any defense to the superseding indictment that defendant may have had was impaired by the passage of time given that the evidence of bail jumping would largely be documentary in nature, coupled with other evidence regarding the indisputable fact that defendant failed to appear at trial (see United States v Lainez-Leiva, 957 F Supp 390, 392 [ND NY 1997], affd 129 F3d 89 [2d Cir 1997]; cf. Wiggins, 31 NY3d at 17-19; Romeo, 12 NY3d at 58).
Based on the foregoing, upon balancing the Taranovich factors, we conclude that the People did not violate defendant's constitutional right to a speedy trial under the aforementioned circumstances of this case (see e.g. Rodriguez, 199 AD3d at 839; Lara, 165 AD3d at 563-564; Barba, 135 AD3d at 950-951; cf. Wiggins, 31 NY3d at 19; Romeo, 12 NY3d at 58).
Entered: June 30, 2023
Ann Dillon Flynn
Clerk of the Court