People v Tyson (2026 NY Slip Op 01446)

People v Tyson

2026 NY Slip Op 01446

Decided on March 17, 2026

Court of Appeals

Cannataro, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 17, 2026

No. 19 

[*1]The People & c., Appellant,
vKenneth Tyson, Respondent.

Michael J. Hillery, for appellant.
Braedan M. Gillman, for respondent.

CANNATARO, J.:
Defendant was indicted 14 months after he allegedly assaulted a corrections officer while incarcerated for a different crime. Both County Court and the Appellate Division concluded that this pre-indictment delay violated defendant's due process rights. Considering the relevant factors according to our precedent, we disagree with the determinations below. We therefore reverse.
* * *
On Christmas Day 2021, New York Department of Corrections and Community Supervision ("DOCCS") officers at Collins Correctional Facility conducted a welfare check on defendant Kenneth Tyson, who was serving a term of imprisonment for a separate conviction. When one of the officers entered his cell, defendant allegedly threw a brown liquid substance that smelled of feces, striking the officer. The officer was nauseated but otherwise unharmed. DOCCS documented the scene, drew up reports, and sent the officer's uniform to the New York State Police Forensic Investigation Center ("FIC") for serological testing a few days afterward. On February 28, 2022, DOCCS sent FIC a "Bioscience Request for Priority Case Status" to expedite the serological testing. On May 2, 2022, FIC reported that the uniform tested positive for urine. During this period, defendant was placed in solitary confinement in the facility's Special Housing Unit ("SHU").
Defendant was granted parole on his previous conviction in July 2022. On July 22nd, 2022, DOCCS formally referred the incident to the New York State Police for prosecution. At some point in August 2022, the State Police sent the referral and evidence package to the District Attorney's Office. In February 2023, defendant was charged by indictment with one count of aggravated harassment of an employee by an incarcerated individual, a class E felony which criminalizes throwing bodily fluids on a corrections officer (Penal Law § 240.32).
Defendant moved to dismiss the indictment as violative of his constitutional speedy trial and due process rights. County Court granted the motion, and the Appellate Division affirmed (234 AD3d 1282 [4th Dept 2025]). The majority held that the pre-indictment delay was unreasonable given that the case lacked complexity, the supporting evidence was available to the People within a short amount of time, and defendant had already served seven months in solitary confinement as punishment for the incident. Two Justices dissented and would have reversed and denied the motion. The dissent opined that the delay was consistent with similar periods previously found to be within constitutional limits and that the People's deferral of prosecution to obtain additional evidence justified the delay. A dissenting Justice granted the People leave to appeal to this Court.
* * *
"By statute and constitutional law, New York guarantees criminal defendants the right to a speedy trial and prompt prosecution" (People v Regan, 39 NY3d 459, 471 [2023], citing People v Staley, 41 NY2d 789, 791 [1977]; People v Vernace, 96 NY2d 886, 887 [2001]; NY Const, art I, § 6; CPL 30.20]). This right necessarily prohibits unreasonable pre-indictment delay (People v Singer, 44 NY2d 241 [1978]). This Court analyzes due process claims predicated on a pre-indictment delay by weighing the five factors set forth in People v Taranovich: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" (37 NY2d 442, 445 [1975]; see Vernace, 96 NY2d at 887). "The Taranovich framework is a holistic one—that is, 'no one factor or combination of the factors . . . is necessarily decisive or determinative of the speedy trial claim'" (People v Johnson, 39 NY3d 92, 96 [2022], quoting Taranovich, 37 NY2d at 445).
Turning to the first factor, viewing the 14-month period from the time of the incident to the time of the indictment in its totality, we note that there is a large body of precedent denying speedy trial claims based on similar periods of pre-indictment delay (see e.g. Taranovich, 37 NY2d at 445 [12 months]; People v Williams, 120 AD3d 1526, 1527 [4th Dept 2014] [14 months], lv denied 24 NY3d 1090 [2014]; People v Pulvino, 115 AD3d 1220, 1222 [4th Dept 2014] [21 months], lv denied 23 NY3d 1024 [2014]; People v Robinson, 49 AD3d 1269, 1269-1270 [4th Dept 2008] [16 months], lv denied 7 NY3d 869 [2008]; People v Chaney, 197 AD3d 1359, 1361 [3rd Dept 2021] [14 months], lv denied 37 NY3d 1059 [2021]; People v Arrington, 31 AD3d 801, 802 [3rd Dept 2006] [16 months], lv denied 7 NY3d 865 [2006]). This factor counts somewhat in the People's favor.
With respect to the second factor, the reason for the delay, the record reflects that DOCCS proceeded with alacrity in the immediate aftermath of the incident, and that part of the delay attributable to the time it took the FIC to return the lab results was justifiable (see Regan, 39 NY3d at 471 [2023] [noting three-month delay in obtaining results from the FIC]). To the extent that defendant argues that the People could have moved forward with prosecution without confirming the presence of urine (see People v Ortiz, 305 AD2d 979, 980 [4th Dept 2003], lv denied 100 NY2d 564 [2003]), we note that lab testing confirms this element of the charge more reliably than witness testimony, and the prosecution should always endeavor to compile evidence not only sufficient to indict, but sufficient to prove its case beyond a reasonable doubt prior to seeking indictment. We find no fault with the decision to procure lab results here. That said, there is little to no explanation for the ensuing nine-month delay after the lab results were returned. We therefore deem this factor to weigh somewhat in defendant's favor.
The third factor, the nature of the charges, does not favor either side. The prosecution's case does not appear to have been complicated. Further, although aggravated harassment of a DOCCS employee by an incarcerated individual is by no means a minor offense, it was not exceedingly serious, especially since the officer was not injured.
Likewise, the fourth factor, pre-trial incarceration, does not favor either party. Although defendant was subjected to a lengthy stay in the SHU following the incident, neither his time in prison nor his time in solitary confinement would have been reduced by a quicker prosecution, or even no prosecution at all. On the other hand, a defendant's status as an incarcerated individual cannot itself excuse the People's pre-indictment delay (see People v Winfrey, 20 NY2d 138, 141 [1967]).
The fifth factor, prejudice to the defense, weighs in the People's favor. Defendant's release and apparent success on parole is laudable, but it did not prejudice his ability to mount a defense on this new charge.
While the People's justifications for the delay are lacking in some respects, balancing all five Taranovich factors, we conclude that defendant was not deprived of his constitutional right to a speedy trial.
Accordingly, the order of the Appellate Division should be reversed, defendant's motion to dismiss the indictment denied and the case remitted to County Court for further proceedings on the indictment.

 
RIVERA, J. (dissenting): The prosecution charged defendant with aggravated harassment 14 months after he allegedly threw bodily fluids at a correctional officer. Now, the prosecution appeals the Appellate Division's order affirming County Court's dismissal of the indictment based on an unconstitutional pre-indictment delay. I would affirm the Appellate Division's order. The prosecution has failed to adequately explain the lengthy delay, which includes a nine-month span after the State Police received laboratory test results confirming the presence of urine in the fluids defendant allegedly threw at the officer. Applying the relevant factors from our precedent holistically, including the straightforward nature of the case, County Court properly dismissed the indictment (see People v Taranovich, 37 NY2d 442, 445 [1975]; People v Johnson, 39 NY3d 92, 96, 97 [2022]). The majority's contrary conclusion rests, in part, on its view that the 14-month pre-indictment delay was not significant, given that other courts have denied speedy trial claims involving similar temporal delays (majority op at 2). But when the delay is viewed in context, as required under our well-established precedent, it exceeds acceptable constitutional limits. Therefore, I dissent.I.
Defendant was incarcerated on an unrelated sentence when, on December 25, 2021, he allegedly threw an "unknown liquid" at a correctional officer who had entered his cell. The officer later noticed brown spots on his face, became distressed, and took a medication to protect against infection for over a month. The Department of Corrections and Community Supervision (DOCCS) immediately placed defendant in solitary confinement, which lasted for seven months, from the incident until July 2022, when defendant was released from prison and placed on parole for the unrelated sentence. In the interim, on February 28, 2022, DOCCS reported the matter to the State Police, which sent the officer's uniform to its forensic laboratory for testing. On May 2, 2022, the laboratory completed a report stating that the liquid on the uniform tested positive for urine. The State Police delivered "incident paperwork" to the prosecution in August 2022, after defendant was released from prison and had commenced parole. The prosecution did not seek an indictment until February 2023, six months later, when it presented evidence to a grand jury. That evidence included testimony from the complainant officer and a second correctional officer, as well as the [*2]laboratory report and several photographs. Based on that evidence, the grand jury indicted defendant for "aggravated harassment of an employee by an incarcerated individual," a class E nonviolent felony (Penal Law § 240.32).
After defendant's release from custody, he moved to New York City, where he complied with the terms of his parole, completed programming, participated in counseling, resided in a transitional housing program, and secured employment as a home health care aide. At the time of defendant's indictment, he had been living in the community without issue for seven months.
Defendant moved to dismiss the indictment on the ground that the pre-indictment delay violated his constitutional right to due process. County Court granted defendant's motion, concluding that the delay was excessive. The Appellate Division affirmed, holding that the delay was unreasonable given that "[t]he case was not complex and did not involve any unique theories of law," and "the required evidence and witnesses . . . were available to the [prosecution] at an early date" (234 AD3d 1282, 1283 [4th Dept 2025]). The Appellate Division's holding is grounded in the factual record and reflects a faithful application of our precedent. Accordingly, I would affirm the Appellate Division's order.II.
The Court has "long held that 'unreasonable delay in prosecuting a defendant constitutes a denial of due process of law' " under the New York Constitution (People v Singer, 44 NY2d 241, 253 [1978], quoting People v Staley, 41 NY2d 789, 791 [1977]). " '[A]n untimely prosecution may be subject to dismissal even though, in the interim, [the] defendant was not formally accused, restrained or incarcerated for the offense' " (People v Regan, 39 NY3d 459, 464-465 [2023], quoting Singer, 44 NY2d at 253). The Court "has never drawn a fine distinction between due process violations based on delay in commencing prosecution and speedy trial violations" (People v Wiggins, 31 NY3d 1, 12 [2018] [internal quotation marks omitted]). In each circumstance, a court must consider the following factors, first articulated in People v Taranovich: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" (37 NY2d at 445). "The Taranovich framework is a holistic one—that is, 'no one factor or combination of the factors . . . is necessarily decisive or determinative of the speedy trial claim' " (Johnson, 39 NY3d at 96, quoting Taranovich, 37 NY2d at 445). "[T]he particular case must be considered in light of all the factors as they apply to it" (Taranovich, 37 NY2d at 445).
"[I]n the context of preindictment delay, . . . 'a determination made in good faith to defer commencement of the prosecution for further investigation or for other sufficient reasons . . . will not deprive the defendant of due process of law even though the delay may cause some prejudice to the defense' " (Regan, 39 NY3d at 465, quoting Singer, 44 NY2d at 254). However, "if commencement of the action has been delayed for a lengthy period, without good cause, the defendant may be entitled to a dismissal although there may be no showing of special prejudice" (Singer, 44 NY2d at 254). "The primary responsibility for assuring prompt prosecution rests with the prosecutors. Prosecutors may not needlessly delay without an acceptable excuse or justification, and a sufficiently lengthy unexplained delay may require [a court] to dismiss the indictment altogether" (Regan, 39 NY3d at 466 [internal quotation marks and citations omitted]).
"[A] defendant's imprisonment for another crime cannot excuse the delay" in seeking an indictment (Singer, 44 NY2d at 254). A delay in such circumstances may "interfere with [the defendant's] rehabilitation, particularly when [they are] already aware that [they are] suspected or 'known' to have [*3]committed the other offense" (id.). Such a delay may further disrupt a defendant's rehabilitative efforts when they are released from custody and attempting to reintegrate into the community, with the uncertainty of prosecution and reincarceration hanging over their head. In other words, a protracted pre-indictment delay "may produce special hardships" for a defendant who is serving a sentence for a prior crime (id.).III.
Applying the Taranovich factors, the Court "has steadfastly refused to set forth a per se period beyond which a criminal prosecution may not be pursued" (Taranovich, 37 NY2d at 445; see Wiggins, 31 NY3d at 12-11 [same]). Instead, whether a delay violates a defendant's right to due process turns on how the Taranovich factors apply in an individual case, measured against one another (see Taranovich, 37 NY2d at 445; Johnson, 39 NY3d at 96). Put another way, under our holistic approach, the facts of one case may justify a delay that under a different set of facts would be excessive and inexcusable. Thus, the majority's conclusion that the 14-month pre-indictment delay "counts somewhat in the [prosecution's] favor," based solely on its superficial observation that "[t]here is a large body of precedent denying speedy trial claims based on similar periods of pre-indictment delay" (majority op at 4), is unpersuasive and inconsistent with the longstanding framework the Court set forth in Taranovich and subsequent case law (see Taranovich, 37 NY2d at 445; Johnson, 39 NY3d at 96). Whether the length of the delay supports a defendant's due process challenge depends on the facts of their case, and not merely on whether another court ultimately concluded that a similar delay was constitutionally permissible, based on that court's holistic analysis of the unique circumstances of the case before it. While a 14-month delay may seem reasonable in cases involving an uncooperative victim, multiple unidentified witnesses, tainted or no physical evidence, and open questions of law impacting potential theories of the prosecution and defense, a similar delay in a case lacking all or some of these circumstances may violate a defendant's due process right to speedy prosecution. The latter situation is present here, as this case is notable for its lack of complexity and its straightforward application of the controlling law to the officer's factual account and the forensic evidence.
The reason for the delay and the nature of the underlying charge inform the determination of whether the prosecution's delay is justifiable under the circumstances. "The constitutional guarantee of a prompt prosecution places a burden on the State, when prosecuting crimes, to do so with alacrity" (Regan, 39 NY3d at 474). The prosecution's good faith determination that it is necessary to further investigate a case may reasonably explain a pre-indictment delay, but "[w]here there has been extended delay, it is the [prosecution's] burden to establish good cause" (People v Decker, 13 NY3d 12, 14 [2009]). Further, a defendant's right to a speedy trial is not "dependent upon what one is charged with," but the prosecution "may understandably be more thorough and precise in [its] preparation for the trial of a class C felony than [it] would be in prosecuting a misdemeanor" (Taranovich, 37 NY2d at 446). "[T]he 'nature' of the underlying crime can refer to both its severity and, relatedly, the complexities and challenges of investigating the crime and gathering evidence to support a prosecution" (Johnson, 39 NY3d at 97). Other relevant considerations include "the availability and willingness of witnesses to testify or the availability and quality of evidence" (id.). In other words, the prosecution may have good cause for taking longer to obtain an indictment when a case is complex or when matters beyond its control, such as an unidentified or uncooperative victim or witness, cause delay.
As the majority acknowledges, the case here is uncomplicated (see majority op at 5). Although it involved a felony charge, the complainant officer was cooperative and credible, and the record does not indicate that the prosecution had trouble coordinating with him or any other DOCCS witness. Indeed, the complainant officer testified before the grand jury, which found sufficient grounds to indict defendant. The forensic laboratory completed testing and produced a report in May 2022, fewer than five months after the [*4]incident, confirming the presence of urine and thus establishing the crux of the prosecution's case, but the prosecution did not obtain an indictment until more than nine months later. Even if we only considered the period from August 2022, when the State Police submitted the incident paperwork to the prosecution, the prosecution still failed to account for why it took an additional six months to seek an indictment. The record contains no evidence that the prosecution took any steps to move the case forward during that period. This delay is especially egregious given that by August 2022, DOCCS and the State Police had investigated the incident and concluded that there were grounds to proceed against defendant. Indeed, immediately after the incident, DOCCS separated defendant from the general population and placed him in solitary confinement for months, until his release on parole, and two months after the incident, the State Police referred the matter to the prosecution, presumably because they concluded that there was a reasonable basis for a criminal prosecution. Moreover, by August 2022, the prosecution would have been aware that there was already an eight-month delay between the incident and the referral, giving it all the more reason to proceed with alacrity. Given these undisputed facts, the prosecution failed to proffer good cause for its delay.
The record does not support the majority's conclusion that the nature of the charges "does not favor either side" (majority op at 5). The majority's determination is based on the flawed premise that the offense "was not exceedingly serious, especially since the officer was not seriously injured," thereby justifying the delay (id.). The prosecution's characterization of the offense as "potentially dangerous" and "degrading," citing legislative history affirming that the aggravated harassment statute is meant to protect correctional facility employees from becoming infected by a "potentially life-threatening" illness, belies the majority's premise that the offense was not serious enough to be prioritized. DOCCS's swift response to the incident by immediately placing defendant in solitary confinement further underscores the error in the majority's logic. The majority's view would also come as a surprise to the complainant officer, because according to the prosecution, the liquid "smelled of feces," "splattering flecks of brown all over [the officer's] face," and the officer, "[u]pon seeing his reflection . . . , was distressed[,] . . . started gagging, went to the bathroom and dry heaved." In any event, the record does not show that the prosecution's caseload required it to prioritize some cases over others based on their "seriousness." Indeed, the prosecution has never made such a claim. Moreover, lengthy backlogs cannot excuse an unjustified delay regardless of other circumstances. Administrative shortfalls do not outweigh a defendant's constitutional right to a speedy prosecution. In sum, the nature of the charge squarely supports defendant's claim, because both the straightforward nature of the case and the offense's relative seriousness did not warrant the delay here.
Finally, while the prosecution asserts that the delay did not prejudice the defense, it fails to account for the delay's impact on defendant's rehabilitative efforts. The Court in People v Singer expanded the concept of prejudice in the pre-indictment context. In Singer, the police waited to arrest the defendant for a homicide until he was released on parole for a prior manslaughter conviction, and the prosecution did not obtain an indictment until almost four years after the incident (44 NY2d at 247-248). The Court observed that the defendant's incarceration on a prior case was not an impediment to prosecuting him in a second case, and raised the concern that the prolonged pre-indictment delay could "interfere with [the defendant's] rehabilitation, particularly when he is already aware that he is suspected or 'known' to have committed the other offense" (id. at 254). In various cases, the Appellate Division, citing Singer, has considered whether a prolonged pre-indictment delay interferes with a defendant's opportunity to rehabilitate while incarcerated for a prior offense (see e.g. see People v Wheeler, 289 AD2d 959, 960 [4th Dept 2001] [applying the Taranovich factors and concluding that the defendant's incarceration for another crime during the period of pre-indictment delay did not excuse that delay, in part, because the delay deprived the defendant of "any meaningful opportunity for rehabilitation" (internal quotation marks omitted)]; People v Santiago, 209 AD2d 885, 888 [3d Dept 1994] [explaining that, in the context of a pre-indictment delay, "(w)aiting for (the) defendant to complete a current sentence produces hardship, including . . . the undermining of rehabilitation"]).
The majority may be correct that a speedier prosecution would not have reduced defendant's period of solitary confinement (majority op at 5). However, the majority fails to consider the significance of the delay's impact on defendant's rehabilitative efforts, as Singer requires, despite its acknowledgement of defendant's "apparent success on parole" (id.). For seven months, defendant resided in the community without incident, complied with the conditions of his parole, and secured gainful employment—by all appearances, he established a law-abiding life. Defendant made these successful efforts overcoming his incarceration and seven months in solitary confinement. Prosecuting defendant following an unexplained delay, after his release into the community, undermined his successful efforts to rehabilitate and reintegrate into society.
Rarely do we conclude that a pre-indictment delay amounts to a constitutional due process violation of a defendant's right to a prompt prosecution. However, we have done so when the delay is unjustifiable based on the totality of circumstances (see e.g. Regan, 39 NY3d at 461-462). The majority ignores this basic directive and excuses a delay that the prosecution failed to adequately explain, and which the nature of the crime charged cannot justify, treating the length of the delay as relatively brief and thus dispositive. Under the circumstances here, the length of the delay is neither.
I dissent.
Order reversed, defendant's motion to dismiss the indictment denied and case remitted to County Court, Erie County, for further proceedings on the indictment. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Garcia, Singas and Halligan concur. Judge Rivera dissents and votes to affirm in an opinion, in which Judge Troutman concurs.
Decided March 17, 2026